# Wilson *et al. v.* Alston.

*Statutory Action of Ejectment.*

1. *Deeds; construction of "heirs of the body" as used in deed.*—In a deed to one and "to the heirs of his body," where it is not apparent on the face of the instrument that "heirs of the body" are employed as words of purchase, such words are words of limitation; and such heirs do not take jointly with the ancestor, but by succession under the grant; the conveyance creating an estate by inheritance, restricted in the course of descent to the lineal heirs of the ancestor named.

2. *Same; same; rule in Shelley's case.*—A deed conveying lands to one and "to the heirs of her body after her death," the words here quoted not being controlled by other words in the instrument, is such a grant as at common law would have fallen within the rule in Shelley's Case, and if made subsequent to the statute abolishing that rule, (Code of 1896, § 1025) such deed operates to convey to the ancestor only a life estate, at the termination of which, those who are heirs of the body of the life tenant take a remainder by purchase in fee simple.

3. *Estoppel; grantor estopped to deny title he assumes to convey.* One attempting to convey an estate in land, is estopped to deny the title he assumes to convey, or to defeat the same by setting up a prior outstanding title in another.

4. *Appeal; failure to sever in assignments of error.*—Where, on an appeal by several defendants, there is no severance in the assignments of error, error in the ruling of the trial court which is prejudicial to some of the appellants and not to all,

is unavailable to reverse the judgment or decree appealed from; it being necessary on such an appeal that the judgment or decree should be prejudicial to all of the appellants.

APPEAL from the Circuit Court of Bibb.

Tried before the Hon. JOHN MOORE.

This was a statutory action of ejectment, brought by the appellee, Samuel F. Alston, against the appellants, to recover certain lands specifically described in the complaint. The record shows that all the defendants, except W. J. Wilson, filed the plea of "not guilty," and there does not appear that there was any plea filed by said W. J. Wilson. The material facts in the case are as follows: On the 5th of March, 1874, James Hill and Nancy Hill, his wife, executed a deed of conveyance of certain lands in Bibb county to their daughter, Grace E. Wilson, "and to the heirs of her body after her death." This deed was filed in the probate office of Bibb county for record on the 5th day of April, 1874. At the time of the execution of this deed Grace E. Wilson, the grantee named, was the wife of W. J. Wilson and the mother of two or three children, and several children were born to her afterwards. In 1885, Grace E. Wilson died, leaving surviving her five children, who, with W. J. Wilson, are the defendants in this suit. At the time of said conveyance, the grantee, Grace E. Wilson went into possession and with her family occupied and resided on said land until her death, and her husband and her children, defendants, have ever since resided on and occupied said lands. After the death of Grace E. Wilson, to-wit, on the 27th day of April, 1894, her husband W. J. Wilson executed a mortgage to Samuel F. Alston, to secure a personal debt of his at that time created for purchase of mules, conveying therein the lands sued for in this action; being a part of the lands conveyed by Grace E. Wilson's father to her by deed as above recited. In default of payment, Alston foreclosed said mortgage, sold and executed a deed to said land to one A. D. Mellin on the 14th day of February, 1895, for consideration of ten dollars, signing the said deed of conveyance "W. J. Wilson by S. F. Alston, Atty. in fact" and "Samuel F. Alston, mortgagee"; and on the same day and for

the same consideration said A. D. Mellin conveyed said land so bought by him to said Samuel F. Alston.

Samuel F. Alston institutes this suit against W. J. Wilson and the children of W. J. Wilson and Grace E. Wilson to recover said lands and damages for the detention of them.

On the trial, as appears from the bill of exceptions, the plaintiff introduced in evidence the mortgage executed by W. J. Wilson to him, the deed which was executed by him to Mellin at the time of the foreclosure and the deed from Mellin back to him. He also introduced in evidence a deed from James and Nancy Hill to W. J. Wilson, dated July 31, 1874; the only recital in the bill of exceptions as to this deed being as follows: "The plaintiff then introduced a deed from James Hill and wife, Nancy Hill, to W. J. Wilson dated the 31st July, 1874, towit, containing the same description as in the deed to Grace E. Wilson of date March 5th, 1874." The defendant offered to introduce in evidence the deed from James and Nancy Hill to Grace E. Wilson which was dated March 5, 1874. To the introduction of this deed in evidence the plaintiff objected upon the following grounds: "1st. That it shows it has been altered. 2d. Because it does not sufficiently describe the land in this suit. 3d. Because this deed is void as to plaintiff, because it is not shown it was recorded in thirty days after its execution. 4th. Because deed shows that Grace E. Wilson took a fee simple. 5th. That she died before the mortgage and her husband was her heir. 6th. That deed does not show title except as to W. J. Wilson, plaintiff, having acquired his title." The court sustained the objection, refused to allow the deed to be introduced in evidence, and to this ruling the defendants duly excepted. The other material facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave the general affirmative charge in his behalf, and to the giving of this charge the defendants duly excepted.

There were verdict and judgment for the plaintiff.

The defendants appeal and assign as error the court's refusal to allow the defendants to introduce in evidence the deed from James and Nancy Hill to Grace E. Wilson, and the giving of the general affirmative charge in favor of the plaintiff.

W. W. LAVENDER and J. M. McMASTER, for appellants.—The deed under which the defendants claim was such a conveyance as at common law would have fallen under the rule in Shelley's case, which rule is, by statute, abolished.—Code of 1896, § 1025. Therefore, Grace E. Wilson, took a life estate in such deed, and her children acquired a remainder interest, which upon her death became a fee simple title in them.—*Slayton v. Blount*, 93 Ala. 576; *May v. Ritchie*, 65 Ala. 602; *Robertson v. Johnston*, 36 Ala. 197; *Williams v. McConico*, 36 Ala. 22; *Williams v. Graves*, 17 Ala. 62; *Jones v. Morris*, 61 Ala. 518; *Wikle v. McGraw*, 91 Ala. 631; *Kumpe v. Coons*, 63 Ala. 448; *Gindrat v. Railway Co.*, 96 Ala. 162; *Smaw v. Young*, 109 Ala. 528; *Sullivan v. McLaughlin*, 99 Ala. 60.

ELLISON & THOMPSON and JONES & BROWN, *contra*.

SHARPE, J.—Upon the trial in the circuit court the plaintiff claimed the land in suit through a mortgage to him made by the defendant W. J. Wilson on April 27th, 1894, and afterwards foreclosed under the power it contained. To show the mortgagor had title when he conveyed he introduced evidence of the mortgagor's possession at that time and also a deed to the mortgagor from James and Nancy Hill dated July 31st, 1874. The defendants sought to claim through and defend under deed from James and Nancy Hill who were the common source of title to their daughter Grace E. Wilson, the deceased wife of W. J. Wilson and the mother of the other defendants. The deed purports to have been executed and duly acknowledged on the 5th day of March, 1874, and was filed for record April 5th, 1874, and it was, therefore, *prima facie* self-proving. The original deed is sent here for inspection, and upon ex-

amination, it appears to have been interlined in two places, but that feature is explained by the testimony of the justice who took the acknowledgment of the grantors to effect that the interlineations, were made before the deed was executed and such fact is recited at the end of the deed. The only ground insisted upon to justify the exclusion of this deed is that which embodies the controlling question in the case and which is stated in appellee's brief as follows: "There are several assignments of error, but all amount to one only, and all raise and involve one question only. That question is, the effect of the deed from James Hill and Nancy Hill to Grace E. Wilson. The plaintiff, appellee, insists that the said deed created in the said Grace E. Wilson an estate in fee-tail; that under our statute this became an estate in fee-simple; that upon the death of the said Grace E. Wilson, her husband, the defendant W. J. Wilson, became entitled to the use of her realty during his life, and that he conveyed to the plaintiff, S. F. Alston, appellee, his life estate in the lands sued for by the mortgage which he executed to him on the 27th day of April, 1894."

The defendants contend that either the grant is to Mrs. Wilson and her children jointly, or if not so, then the terms of the conveyance are such as would at common law have brought the grant within the influence of the rule in Shelley's case, and that by the statute abolishing that rule the whole estate vested in the children at their mother's death.

The granting clause of the deed is as follows: "We do grant, bargain, sell and convey to the said Grace E. Wilson of the 1st part and to the heirs of her body after her death, the following described real estate, to-wit." Next following the description is the *habendum* clause, "to have and to hold to the said Grace E. Wilson of the first part and to the heirs of her body after her death."

The words "heirs of the body" by a long course of legal interpretation acquired a settled meaning whereby they impute to the grantor the intention to create an estate of inheritance restricted in the course of descent to the lineal heirs of the ancestor named.—*May v.*

*Richie,* 65 Ala. 602; 4 Kent's Com. 214; 1 Wash. on Real Prop., (5th ed.), 110. From other parts of the conveyance it may appear that such words were not used in their strict legal sense, and that they were employed merely to designate certain persons whom the grantor intended should take by purchase instead of by descent, as when an indiscriminate use is made of the word heirs along with the word children or other qualifying words, and in such cases, even when the meaning of the conveyance is doubtful, that construction is favored which carries the estate to persons so designated to be held by purchase. We find nothing in this deed, however, to control or qualify the meaning usually attaching to such words and, therefore, nothing to sustain the position that the children of Mrs. Wilson could take as purchasers jointly with her by force of the terms employed in this deed.

The remaining consideration is whether the operation of the deed is controlled by section 1021 or by section 1025 of the Code of 1896. Section 1021 is the older enactment, dating from 1812; and until the passage of the later statute, affecting conveyances by their terms falling within the rule in Shelley's case, it had effect to convert into absolute fees all estates in fee-tail. The statute now section 1025 first appeared as section 1304 of the Code of 1852. The later statute operates as imported by its title to abolish the rule in Shelley's case, the abolition being not in express terms, but by altering the effect of conveyances falling within that rule so that estates granted by them should vest by purchase in the persons, who on the termination of the life estate, answer the description of the descendants named in the conveyance. It is not retroactive and has no application to conveyances made before its enactment. A test by which to determine whether a grant made since this statute has been in force is of the class mentioned and controlled by it is, whether in the absence of the statute it would have fallen within the rule which the statute abolished. Where the grant is such as to import merely an estate tail in the first taker, as "to A and the heirs of his body," the rule had no application.—*Mason v.*

*Pate,* 34 Ala. 379; *Pierson v. Lane,* 60 Iowa 60; 4 Kent's Com. *216. In such case, by section 1021, the fee-tail estate, so imported, is converted into an estate in fee-simple. An examination will show that many of the decisions of this court relied on by appellee involved grants of such character and were determined upon such principle; and, therefore, are not applicable to conveyances governed by the rule in Shelley's case. Among the more recent of those cases are *Smith v. Greer,* 88 Ala. 414, and *Slayton v. Blount,* 93 Ala. 576.

The decisions in *Holt v. Pickett,* 111 Ala. 362, *Campbell v. Noble,* 110 Ala. 383, and *McQueen v. Logan,* 80 Ala. 304, also relied on by appellee, were each based upon instruments antedating the Code of 1852, and that fact is referred to in the opinions. The cases of *May v. Richie,* 65 Ala. 602, *Campbell v. Noble, supra,* and *Wikle v. McGraw,* 91 Ala. 631, were determined upon the consideration that the class of persons named in the grants took as purchasers by force of the terms employed in the grants. In the last named case the date of the conveyance does not appear from the report. To bring a conveyance within the class which was governed by the rule in Shelley's case, and within the class mentioned in section 1025, a life estate and a remainder must be imported by the terms of the grant. It is not necessary, however, that such interests be expressly named. They may sufficiently appear by implication as the legal result of the terms employed.

In *Mason v. Pate's Extr., supra,* this court had under consideration a will containing this clause: "I will and desire that the property which my daughter obtains from this my will at her death to descend to her bodily heirs;" and in determining whether the grant would have been within the rule in Shelley's case it was said: "An examination of the authorities will show, that no particular or technical import was attached to the words *remainder, after his or her death,* &c.; or to the language by which the estate in the first taker was created. The rule was applied to all cases, where an estate for life was given to the first taker, and an attempt made, after its termination, without more specific

words, to vest an estate by purchase in the *heirs,* or
*heirs of the body* of the first taker." And again in de-
termining the effect of the grant under section 1304 of
the Code of 1852, now 1025 of the present Code, it was
said: "We hold, then, that section 1304 of the Code ap-
plies to all cases, where an estate is given to A. expressly
for life, with remainder, or at the death of A., the first
taker, to the heirs, issue, or heirs of the body of such
grantee or devisee. It also embraces all cases, where
an estate is given generally to A., followed by the words,
*with remainder,* or *at the death of A.,* (or other equiv-
alent expression), to the heirs, issue, or heirs of the
body of A. In each of these cases, before our statute, a
fee or absolute title would vest in A., the first taker;
while in each it is morally certain that a life estate only
was intended, but which life estate was enlarged into a
fee, or absolute title, by force of the rule in Shelley's
case."

We think it sufficient to rest the construction of the
deed here in question upon the authority of that case
which was well considered and has long stood as a rule
of property. This grant, being to Mrs. Wilson and to
the heirs of her body after her death, naturally imports
that her interest is for life and that class named to suc-
ceed to the estate are to take an estate tail in remain-
der. It results from such construction that the deed of-
fered in evidence by defendants took effect under the
provision of section 1025 of the Code, and at the death
of Grace E. Wilson vested in her children the fee simple
title to the land it conveyed, and that W. J. Wilson had
no estate by the courtesy therein which could pass by
his mortgage. But the exclusion of the deed by the trial
court is not a matter of which the appellant W. J. Wil-
son can complain. It appears from the judgment entry
in this case that upon the trial issue was joined upon
the plea of not guilty alone. The plea of not guilty ap-
pearing of record was not joined in by W. J. Wilson.
But whether or not we shall presume that the case was
tried upon the plea of not guilty as to him, still he is
not in a situation to complain of the exclusion of the
deed. Being the mortgagor he is estopped to deny the

title he assumed to convey or to defeat the same by setting up a prior outstanding title in another.—3 Wait's Actions and Defenses, pp. 17, 98, 112, and cases there cited; 6 Am. & Eng. Encyc. of Law, 245, note s and cases there cited; *Pollock v. Maison*, 41 Ill. 516; *Matthews v. LeCompte*, 24 Mo. 505; *Harrison v. Taylor*, 33 *Ib.* 211.

There was no severance in the assignments of error, and the established rule in such case is that to be available to reverse a judgment or decree the error must be prejudicial to all who join in the assignment.—*Rudulph v. Brewer*, 96 Ala. 189.

As the result of a single action of this character is not conclusive upon the rights of either of the parties, we have thought best to define those rights as they appear from the record, though finding no error of which appellants can jointly complain, the judgment appealed from must be affirmed.