182 So. 72

**WRIGHT v. CITY OF TUSCALOOSA et al.**

6 Div. 208.

Supreme Court of Alabama.

June 2, 1938.

Rehearing Denied June 30, 1938.

Reuben H. Wright, W. Tunstall Searcy, and Ward W. McFarland, all of Tuscaloosa, for appellant.

Foster, Rice & Foster, McQueen, McQueen & McQueen, Jones & Dominick, Ward & Ward, and Penick & Mustin, all of Tuscaloosa, for appellees.

**KNIGHT, Justice.**

This appeal involves the right to and disposition of a certain fund paid into court by the City of Tuscaloosa for certain land condemned on due proceedings instituted in the Probate Court of Tuscaloosa County by said city. The land so condemned was a part of the Cherokee Place, formerly the property of Mrs. Cherokee M. J. Hargrove. The respondents in the condemnation proceedings were Mrs. Minnie C. Van de Graaff, a daughter of the said Mrs. Hargrove, and Mrs. Van de Graaff's children and grandchildren, and certain judgment creditors, mortgagees and grantees of Mrs. Van de Graaff and her children.

A construction of the will of Mrs. Cherokee M. J. Hargrove, deceased, is necessary to determine the issues involved in this proceeding.

Mrs. Hargrove, the testatrix, on February 7, 1903, executed her last will and testament. At that time she was on her death bed, and died on March 4, 1903, in Tuscaloosa County, Alabama.

The testatrix left her surviving only two children, Mrs. Minnie C. Van de Graaff, who is still living, and now more than seventy years of age; and Robert J. Hargrove.

At the time of the execution of the will in question, and at the time of the death of Mrs. Hargrove, Mrs. Van de Graaff had five children. For convenience we here state the names and dates of birth of said children and also dates of death of such as have died since the death of the testatrix:

(1) Adrian V. Van de Graaff, who was born September 6, 1891, and who died intestate on March 14, 1936, without having married.

(2) Coleman Hargrove Van de Graaff, who was born September 7, 1893, and who died intestate on January 2, 1938, without having married.

(3) William T. Van de Graaff, who was born October 27, 1895, and who is now living, and has two children.

(4) Cherokee V. Rountree, who was born July 15, 1898, and who died intestate on March 21, 1934, leaving only one child, J. Asa Rountree, III, and who is now about ten years of age.

(5) Robert J. Van de Graaff, who was born December 20, 1901, and who is married and is still living.

Robert J. Hargrove, son of testatrix, was not married at the date of the death of his said mother, but married thereafter, and died on August 30, 1909, leaving a widow, Louise Brown Hargrove, and one child then surviving. In 1918, the child of said Robert J. Hargrove died leaving no brothers or sisters, nor descendants of any child or children, but leaving his mother, the said Louise Brown Hargrove as his sole heir at law.

The preamble to the will is in the following words: "Considering the uncertainty of human life, and desiring to dispose of my worldly possession as to best provide for the well being of my family, I, the undersigned, C. J. Hargrove, hereby make and publish this my last will and testament."

The first clause of the will of Mrs. Hargrove simply makes provision for the payment of debts by her executors.

The third and sixth are the only clauses pertinent and material, in determining the

question now before us. We therefore set them out in their language:

"Third: I *give* and devise my plantation, known as *the Cherokee Place,* near Northport in Tuskaloosa County, State of Alabama, including the entire tract of about 3500 acres, *to* my two children, Minnie C. Van de Graaff and Robert J. Hargrove, for them to *have, hold, use* and. *enjoy* the *rents* and *profits* therefrom *for the terms of their natural lives, each* to have *an equal moiety* in said *rents and profits:* but it is *my will* and I so direct *that no part* or *parcel of said tract* of *land* and *no interest* in the same *except* said *rents* and *profits shall* ever be *liable* for any *debts contracted* by the said *Minnie C. Van de Graaff* and *Robert J. Hargrove.* I further will and direct that *after the death of* my daughter, *Minnie C. Van de Graaff,* an undivided *one half* interest in *said Cherokee Place shall descend to* and be the property, absolutely of *her lineal descendants:* and *after the death of* the said *Robert J. Hargrove* I will and direct that the other. *one half* interest in *said Cherokee Place shall descend to* and become absolutely the property of *the lineal descendants of* the said *Robert J. Hargrove;* and *should* the said *Robert J. Hargrove* die *without leaving* any *lineal descendants,* then it is my will and I so direct that the *lineal descendants of* the said *Minnie C. Van de Graaff shall take* and hold absolutely and in fee simple *the entire Cherokee Place."*

"Sixth: I hereby appoint my daughter Minnie C. Van de Graaff and my son Robert J. Hargrove, the executors of this will; and I especially direct that they shall not be required to give any bond as such executors, nor shall they be required to make inventory of my estate or any report of any kind concerning the execution of this will to any of the courts of this state. I give my above named executors full power and control over my estate to manage and control the same as they may see fit and proper for the best interests of the same, and give them power to sell and convey any property they may desire to sell, either for the purpose of paying debts or for distribution. In the event of the death of either of my executors the other is hereby vested with all the powers hereby conferred on them both. *In giving my* said *executors power to sell* and dispose of property belonging to my estate *I hereby* expressly *except* the tract or place known as *the Cherokee Place, it being my* express will and *desire* that they shall have *no control of that place except* as to the *rents* and *profits."*

■ Rules of construction adopted by the courts were and are intended to aid the court in arriving at, and giving effect to, the intention of the testator, when, by the language employed, doubt exists as to the true purpose and intention of the testator.

■ It is said in all our decisions, as well as in the decisions of the courts of other jurisdictions, that the cardinal rule, and the one above all others to be followed, is to ascertain the intention of the testator, and give it effect if not in contravention of some rule or principle of law. O'Connell v. O'Connell, 196 Ala. 224, 72 So. 81; Betts v. Renfro et al., 226 Ala. 635, 148 So. 406.

■■ Likewise this Court, in line with other courts, is firmly committed to the rule that the law favors "a vested rather than a contingent remainder." McGlathery v. Meeks, 219 Ala. 89, 121 So. 67, 70. And it must also be conceded that the law will not construe a limitation in a will into an executory devise when it can, without doing violence to the intention of the testator, be given the effect as a remainder, "nor a remainder to be contingent when it can be taken to be vested." Duncan v. De Yampert, et al., 182 Ala. 528, 62 So. 673, 674; Doe v. Considine, 6 Wall. 458, 476, 18 L.Ed. 869; Bruce v. Bissell, 119 Ind. 525, 22 N.E. 4, 12 Am.St.Rep. 436.

■ It must also be recognized that the "law favors the construction by which the estate is regarded as vested rather than contingent, or by which it will become vested 'at the earliest moment," and this being true, it is held "that the intent to postpone the vesting of an estate must be clear, and not arise from mere inference or construction." Duncan v. De Yampert, supra; Pearce v. Pearce, 199 Ala. 491, 74 So. 952, 954.

Best, C. J., in Duffield v. Duffield, 1 Dow. & C. 311, observed: That all estates are to be holden to be vested, except estates in the devise of which a condition precedent is so clearly expressed that the courts cannot treat them as vested without deciding in direct opposition to the terms of the will. And this Court, in the case of Phinizy v. Foster, 90 Ala. 262, 7 So. 836, which was a well considered and many times cited case, in an opinion by Clopton, J., said of the above rule declared by Best, C. J., in the case of Duffield v. Duffield, supra; "The rule is generally applied when the intention of the testator is obscure and doubtful. It has no

application when the intention to create contingent legacies or devises is clear. In respect to each of the rules, the intention of the testator, *as shown by the words employed by him,* must control." (Italics supplied).

In the case of Watters v. First National Bank of Mobile, 233 Ala. 227, 171 So. 280, it was observed (page 287): "Much stress is laid upon the principle that the law inclines to regard legacies as vested, rather than contingent, and the numerous authorities noted by the chancellor so announce this rule. But the basis of this rule rests in the presumption that the testator had in view the interest of the legatee who is the object of his bounty (Travis v. Morrison, 28 Ala. 494), and the question recurs, to the mind of the testator, as to what he considered to the best interest of the object of his bounty. If the whole scheme of the testator, as gathered from the entire will, discloses that he considered an early vesting of interest in his children not to their advantage, then, of course, the reason for the rule and its foundation would fail, and it would lose its significance. As said in the Travis Case, supra (cited approvingly in a number of cases, First National Bank v. Cash, 220 Ala. 319, 125 So. 28): 'The law does not favor the vesting of legacies, contrary to the testator's intention, as inferred from an examination of the entire will.' "

Section 6907 of the Code 1923 provides: "Where a remainder created by a deed or will is limited to the *heirs, issue,* or *heirs of the body of a person* to whom a life estate in the same property is given, the persons who, on the termination of the life estate are the heirs, issue, or heirs of the body of such tenant for life, are entitled to take as purchasers by virtue of the remainder so limited to them." (Italics supplied.)

It will be noted, of course, that this section uses the words *heirs, issue* and *heirs* of the body, while the language in the will is "lineal descendants." What then do the words "lineal descendants" mean, as employed in the will here under consideration? There is not one word in the will, as was the case in the case of Duncan v. De Yampert, supra, to indicate that the testatrix used this term indiscriminately with children to denote the same class. So, then, we must look elsewhere for the meaning of the term *"lineal* descendants."

In 37 C.J. p. 1262, the author defines the term Lineal Descendant as: "Direct descendant, but not brothers and sisters: one who is in the line of descent from a certain person: a term which is said to be synonymous with 'issue'."

"Descendant: One who is descended, as issue, lineally from another however, remotely, as a child, grandchild, great grandchildren." Funk & Wagnalls New Standard Dictionary, 687.

In the case of Culley et al. v. Elford, 187 Ala. 165, 65 So. 381, it was observed that (page 384) "heir or heirs of her body" mean lineal descendants.

"In its legal sense, as used in statutes, wills, deeds, and other instruments, 'issue' means descendants; lineal descendants; offspring." 33 Corpus Juris, Section 4, p. 818; Hertz v. Abrahams, 110 Ga. 707, 717, 36 S.E. 409, 50 L.R.A. 361; Beaty v. Calliss, 294 Ill. 424, 128 N.E. 547, 549; Lamb v. Medsker, 35 Ind.App. 662, 74 N.E. 1012; Dexter v. Inches, 147 Mass. 324, 326, 17 N.E. 551; Dennis v. Dennis, 86 N.J.Eq. 423, 99 A. 889, 890; Jordan v. Roach, 32 Miss. 481, 612; Riker v. Gwynne, 201 N.Y. 143, 94 N.E. 632, 634.

In the case of Reynolds et al. v. Love et al., 191 Ala. 218, 68 So. 27, this Court held (page 29) that a " 'devise to Caroline for life, remainder to her issue': 'Issue' means descendants living at the death of Caroline."

It is perfectly clear and obvious that the will before us was written by an attorney skilled in such matters, and the terms employed should be construed in that light.

Section 6907 of the Code has been the law of this state for upward of eighty years, and its provisions are well understood by the profession.

In the case of Wilson et al. v. Alston, 122 Ala. 630, 25 So. 225, 227, this Court had occasion to further consider the effect of Section 6907 of the Code, and it was observed that this statute "operates, as imported by its title, to abolish the rule in Shelley's Case, the abolition being not, in express terms, but by altering the effect of conveyances falling within that rule, so that estates granted by them should vest by *purchase* in the persons *who, on the termination of the life estate, answer the description of the descendants named in the conveyance.*"

In the case of Smith v. Buchus et al., 195 Ala. 8, 70 So. 261, this Court held that where a deed conveyed land to a daughter of the grantor during her natural life, for her sole and separate use, and after her death to go by way of remainder to her *heirs,* the daughter being then unmarried, the deed be-

ing apparently drawn by one who understood the use of the terms employed, it was intended to create a life estate in the daughter, with remainder to her heirs at law *at the date of her death.* That the estate created by this conveyance fell within the express terms of Section 3403, now Section 6907, of the Code.

We revert now to the will to see if there are any evidences, within the four corners of the instrument, that would indicate, or even suggest that the testatrix meant to give the estate in remainder to the children of the life tenant, *so as to* give to them, on her death, vested remainders. We find no such evidence in the will. If she had intended to give these children vested remainders, no doubt, the attorney who was entrusted with the drawing of the will would have so written the instrument. He, of course, knew the meaning of technical legal terms, and it would have been quite easy to have provided that at the death of the life tenant, the remainder interest should pass to, and become the property of, the children of the two life tenants. There is not in the entire will any mention of children of the life tenants, on the contrary in each instance the testatrix, in referring to the class designated to take the two remainders, uses the descriptive words "lineal descendants." Of course, the adjective word lineal, as so used, is but a pleonasm and doubtless used for emphasis. But we do find the expression in the books.

■ It is also apparent that the testatrix intended at all events to keep the Cherokee Place in the ownership and possession of the line of her own blood, and intended to exclude from the succession any and all heirs, or other persons, who were not descended from her child Minnie C. Van de Graaff. We find that the will provides that after the death of said Minnie C. Van de Graaff, the one-half interest in said place given to said life tenant shall "descend" to and be the property absolutely of her *"lineal* descendants." The very use of the word *"descend"* is quite suggestive, fairly indicating that it was the intention of the testatrix that the remainder should not pass until the death of the life tenant, and then that it should "go down to" the lineal descendants of the life tenant, whoever they might be at the time of the falling in of the life estate.

So solicitous was Mrs. Hargrove to preserve this property for the enjoyment of the life tenant, and lineal descendants, that she provided that her daughter should have only a qualified life interest in it, to that end, pro-

viding that it should not be, except as to rents and profits, liable for any debts of the life tenants. If the contention of the appellees is correct, Mrs. Van de Graaff and her five children could, the next day after the probate of the will, have alienated the property, if the children were then of lawful age. This was not the intention of the testatrix, we feel convinced.

As some further evidence of the fact that it was not the intention of the testatrix to pass a vested interest to the children of the life tenant, eo instante the death of the testatrix, we refer to the Sixth Clause of the will. By this clause the executors were given the power to control and manage the properties of the estate, and to sell any property that they might see proper to sell. But before closing this clause, and as the very last testamentary expression, the testatrix says: "In giving my said executors power to sell and dispose of property belonging to my estate, *I hereby expressly except the tract or place known as the Cherokee Place, it being my express will and desire that they shall have no control of that place except as to the rents and profits."*

This Cherokee Place had been in the family of the testatrix since *about the year 1821.* In its soil lie buried some of her ancestors. For this place testatrix had a strong attachment. She desired, evidently, to keep its ownership in the descendants of her daughter, who would necessarily be blood relatives of testatrix.

■ Remainders are either vested or contingent. "A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen." Code, § 6905.

"No estate in lands can be created by way of contingent remainder; but every estate created by any will or conveyance, which might have taken effect as a contingent remainder, has the same properties and effect as an executory devise." Code, § 6902.

■ "A remainder is said to be vested when the estate passes out of the grantor at the creation of the particular estate, and vests in the grantee during its continuance, or eo instanti that it determines, when a present interest passes to a *certain and definite person,* to be enjoyed in futuro, and is said to be contingent when the estate is limited either to a dubious and uncertain person, or upon the happening of a dubious or

uncertain event,—uncertainty of the *right* of enjoyment, as distinguished from the uncertainty of *possession.*" Phinizy v. Foster, supra.

Giving due consideration to the provision of Section 6907 of the Code, as well as to the express language of the will, we are constrained to hold that the will of Mrs. Hargrove created at most in the children of Mrs. Van de Graaff a contingent remainder in one-half interest in the Cherokee Place, which, by force of Section 6902 of the Code, has the same properties and effect of an executory devise. Such being the case we hold that this interest, by the plainest terms of Section 7806 is not subject to levy and sale under execution. We further hold that the said Asa J. Rountree, III, his mother having died, has a contingent remainder in said estate, and the interest is not affected by any mortgage given by his mother, or judgment secured against her.

The contingent interest of all the parties is subject to be defeated by their death before the falling in of the life estate in Mrs. Van de Graaff.

Inasmuch as Asa J. Rountree, III, was not a party to the partition proceedings, and was not represented by any class, he certainly is not bound by such proceedings. Culley et al. v. Elford, 187 Ala. 165, 65 So. 381.

It follows, therefore, that the decree of the circuit court will be reversed, and the cause remanded to that court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.