In re Jerry A. BEACH, Debtor.

**ALABAMA NATIONAL BANK OF MONTGOMERY, as Trustee for Remainder under Item Eight of the Jimmy Lee Crenshaw will and for Residual Legatees under said will in the event of the lapse of the devise set forth in said Item Eight, Plaintiff-Creditor,**

v.

**Jerry A. BEACH, Debtor; and Von G. Memory, Trustee, Defendants.**

**Bankruptcy No. 81–00416.**

**Adv. No. 81–0216.**

United States Bankruptcy Court,
M. D. Alabama.

Aug. 26, 1981.

Thomas S. Lawson, Jr., Shapard D. Ashley, Montgomery, Ala., for plaintiff-creditor.

L. H. Walden, Montgomery, Ala., for defendants.

OPINION ON PETITION TO LIFT STAY, FOR DECLARATION OF CERTAIN DEBTS AS NON-DISCHARGEABLE AND FOR OTHER RELIEF

RODNEY R. STEELE, Bankruptcy Judge.

On June 25, 1981, plaintiff filed a complaint to have this Court determine that

---

certain debts owed by the defendant-debtor Beach to the plaintiff were non-dischargeable, and to further authorize the lifting of the automatic stay to authorize the plaintiff to proceed in a certain action filed by it against the defendant Beach in the Circuit Court of Montgomery County, Alabama, to liquidate and recover on such debts alleged to be non-dischargeable.

By a Summons and Notice of Trial entered on July 6, 1981, the complaint was set to be heard at Montgomery on July 16, 1981. Notice was supplied to the debtor and his attorney, to the trustee, and to the plaintiff's attorney.

On July 10, 1981, the debtor-defendant answered denying that he was guilty of any misconduct which would make any debts due to the plaintiff nondischargeable, and alleged that the debt was dischargeable.

On July 16, 1981, the parties expressed a desire to have the Court treat the hearing as a pre-trial hearing, and it was so treated and a new trial date was set of August 17, 1981.

On July 24, 1981, the Reliance Insurance Company, a bondsman for Jerry A. Beach in his capacity as a guardian, filed an answer to the complaint of the Alabama National Bank in this case, but at the time of trial in this matter, withdrew its answer in open court. See the withdrawal of answer filed on August 26, 1981.

The complaint came on for hearing on August 17, 1981. Testimony was taken from the defendant-debtor Beach, and from Cary Slay, trust officer of the Alabama National Bank. Exhibits offered and admitted into evidence were plaintiff's exhibits one through seven. Exhibit Number 1 is a copy of the record of state court proceedings involving Jerry A. Beach as guardian for his two minor children and certain court proceedings instituted on behalf of the wards of Beach as guardian for the recovery of certain property and the imposition of a trust on that property for the benefit of the wards.

The matter was on August 17, 1981, submitted upon the testimony and other evidence taken, and upon the filing of briefs and citations to authority.

## ISSUES PRESENTED

The complaint sets out that Jerry Beach, this debtor-defendant was a duly appointed guardian for his two minor children and that he held and managed certain property of those wards for their benefit, and that he owed the guardianship estate of his wards certain moneys which he had failed to pay, and which he as guardian had failed to collect and account for, and that such debts were non-dischargeable in his bankruptcy proceeding here, because, in the first place they were debts incurred through false pretenses, a false representation or actual fraud, and on the other hand that they were debts for fraud or defalcation while acting in a fiduciary capacity. See Sections 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code of 1978 (11 U.S.C. § 523).

Specifically, the allegations are that debtor-defendant was guilty of false pretense and false representations or actual fraud when he individually leased approximately one thousand acres of land belonging to his children, from himself as guardian for those same children, his wards, and at the time of entering upon the lease of that land the defendant Beach did not intend to or knew that he could not pay all of the rental installments to himself as guardian as they became due.

Specifically, as to the claimed debt under Section 523(a)(4), it is alleged that Beach, as guardian of his two children, James Anderson Beach and Bobbie Elizabeth Beach, was guilty of defalcation in failing to take reasonable steps to protect, preserve and invest the guardianship property to reduce losses and to recover moneys owed on the guardianship account, and by otherwise wasting the guardianship property and neglecting the affairs of the guardianship.

## FINDINGS

Jimmy Lee Crenshaw died in about 1973. He died owning considerable real estate, and by his last will and testament provided, at paragraph eight as follows:

I give, devise and bequeath to my wife, Annie J. Crenshaw, FOR HER LIFE ONLY, the tract of land of approximately 2,000 acres known as my home place. This 2,000 acres is located in Lowndes County, Alabama, on one tract on the west side of U. S. Highway # 31, opposite my old residence. I have recently constructed a new home on this 2,000 acre tract.

At the death of my wife, Annie J. Crenshaw, I give, devise and bequeath the above described property in fee simple to the then living children of Nita Beach, the niece of my wife, Annie J. Crenshaw...

Nita Beach was the wife of Jerry Beach. They have two children, James Anderson Beach and Bobbie Elizabeth Beach, both minors.

Jerry Beach was appointed as guardian for his two minor children, and he obtained an order from the Circuit Court of Montgomery County, Alabama, on October 9, 1975, to cut the timber from the two thousand acres, to apply the proceeds from the cutting of the timber to the purchase of an additional tract of land of approximately one thousand acres, known as the Powell Property.

Beach, as guardian, then arranged to have the timber cut on the two thousand acres, and with the proceeds purchased the Powell Property in the name of his two wards, James Anderson Beach and Bobbie Elizabeth Beach.

By the same Order of October 9, 1975, Jerry A. Beach leased the Powell Property together with one Thomas Sansom, Jr., for the sum of five thousand dollars per year. And in December of 1975, Beach entered into possession as tenant of the Powell Property, and remained in possession for three years until December of 1978. Rentals for these years were due annually in arrears in December of 1976, 1977 and 1978. Beach remained in possession of the property for the three-year period and maintained a cattle farm on that property. He thus owed $15,000 to himself as guardian, from whom he had leased the property. He paid only the first five thousand dollars rent due in December of 1976. He owes a balance of ten thousand dollars for rent due in December of 1977 and December of 1978.

The money was due to be paid by him to himself as guardian and accounted for in the guardianship account.

The lease arrangement is now terminated as between Jerry A. Beach, individually, and Jerry A. Beach as guardian of his two minor children.

In the guardianship proceedings in the Circuit Court of Montgomery County, Alabama, the debtor, Jerry A. Beach as an individual has been found liable for the rentals not paid to himself as guardian.

A separate proceeding in the Circuit Court of Montgomery County, Alabama, seeks to impose liability upon Beach as guardian and upon his guardian's bondsman for failure to faithfully perform the duties of guardian.

The application in this Court is to determine whether the individual liability of Beach to pay rent, determined by the Circuit Court of Montgomery County, Alabama, in its Order of October 29, 1980, to be a judgment debt is dischargeable in bankruptcy under 523(a)(2)(A).

The present application also seeks to have this Court determine whether the liability sought to be imposed upon Beach as guardian in the pending suit in the Circuit Court of Montgomery County, Alabama, is a dischargeable debt under Section 523(a)(4) of the Bankruptcy Code.

The Circuit Court of Montgomery County, in the accounting required of the guardian and in the appointment of a trustee to preserve the interest of the wards as remaindermen and legatees under the will of Crenshaw, set out in that Court's Order of October 29, 1980, made certain conclusions of law pertinent to the findings of fact in this case.

The Court in that Order of October 29, 1980, held that the remainder interest of James Anderson Beach and Bobbie Elizabeth Beach, the children of Nita Beach,

living at the time of the death of Crenshaw, were contingent and vested no present interest in them. The wording of the will, it was concluded, created a life estate for the life of the widow, with a contingent remainder interest over to certain unascertainable persons, namely those who might be born after the death of Crenshaw and before the death of his wife, and the possibility that James Anderson Beach and Bobbie Elizabeth Beach might die before the death of the widow.

That Court also concluded in its Order that since the Powell Property had been purchased with proceeds from the timber sales from the two thousand acres, it was proceeds from the sale of property in which contingent remaindermen had an interest, and that the Powell Property, directly traceable to those timber proceeds, should be vested in a trustee for the benefit of all contingent remaindermen or residuary legatees under the will of Crenshaw. That trustee should also recover all rents and profit derived from the Powell Property to be held for distribution to those remaindermen who might be living and capable of taking at the time of the death of Mrs. Crenshaw. That Order further appointed a trustee, the Alabama National Bank in this case, to recover the property and manage it for the benefit of those remaindermen and legatees.

The Order further provided for the turnover of all such properties including the Powell Properties and the rents and profits therefrom, by this debtor-defendant Beach and other who might have custody and control of it.

## CONCLUSIONS

1. As to the dischargeability of Beach's debt, already reduced to judgment for non-payment of rent, alleged under 523(a)(2) of the Bankruptcy Code to be a fraud or a false representation, we find no proof of such wrongdoing. There is no evidence

that Beach, when he leased the Powell Property, did not intend to pay the rent. His testimony, not contradicted, is that the failure of his cattle business left him with no money to pay the rent to the guardianship estate. That debt is, then, simply a dischargeable debt insofar as it is a debt owing by Beach individually.

■ 2. As to the dischargeability of Beach's debt as guardian for defalcation while acting in a fiduciary capacity, under Section 523(a)(4) of the Bankruptcy Code of 1978, the conclusion must be that this debt, under the applicable Alabama law, is nondischargeable.

A) There is no doubt that Beach, as appointed guardian for his two children, bore a strong relationship of trust and confidence to them, one of the highest of fiduciary duties. He was appointed as their guardian by the Probate Court of Montgomery County; he acted as guardian under the letters of guardianship; the Circuit Court of Montgomery County, per Phelps, Judge, concluded that Beach was a guardian in its Order of October 29, 1980; moreover, Beach held or controlled property admittedly not his own, and which belonged to either vested or contingent remaindermen including his wards, and which he undertook to manage and hold for others.

There is some argument, not unpersuasive, that because the Circuit Court of Montgomery County, in its Order of October 29, 1980, concluded that "the remainder interest of James Anderson Beach and Bobbie Elizabeth Beach is contingent and vests no present interest in them," then the guardian had nothing of the willed property belonging to his wards which he needed to protect or preserve.

The conclusion that the two wards had no "present" interest does not mean, however, that they did not have some interest. That interest was determined to be contingent.[1] And whether the interest was vested and thus clearly an interest of the wards to be

---

1. A finding of contingency, where the law prefers vesting of remainders, is not without some doubt, in light of some older Alabama cases. Cf. *Thorington et al. v. Thorington, et al.*, 1896,

111 Ala. 237, 20 So. 407; *Blakeney v. DuBose*, 1910, 167 Ala. 627, 52 So. 746; *Wright v. City of Tuscaloosa*, 1938, 236 Ala. 374, 182 So. 72.

protected, or contingent, and thus an executory devise under Code of Alabama 1975, Section 35–4–212, it was a right in the wards, alone or with other "unascertainable persons" which interest of the wards a fiduciary for the wards is bound to protect and preserve in Alabama. *Badham v. Johnston*, 1940, 239 Ala. 48, 193 So. 420.

B) It is also clear that there was defalcation by Beach in the management and accounting of the guardianship.

Cases cited to us by Beach emphasize the failure of the fiduciary to account for and pay over money collected for the estate he administers. And this is undoubtedly defalcation, a truncating or cutting short of the rights of the beneficiaries.

But such cutting short of the rights of beneficiaries may occur in other ways, which readily show up in the accounts of their fiduciary.

Thus where a guardian has leased lands of his wards to third persons for a period longer than one year, he is bound to get confirmation of such lease from the Court which appointed him and to prove to that Court that he has security for the payment of rent under the lease. Otherwise, the lease may not be approved. Code of Alabama, 1975, Section 26–4–22.

We find no evidence of such confirmation or security in this case from the lessee.

■ Moreover, where guardian deals with himself as an individual, in handling the property of his wards, he is treated as if he himself had leased and is charged with full liability for all risks and losses. In *Micou v. First National Bank of Montgomery*, 1882, 104 U.S. 530, 26 L.Ed. 834, the Supreme Court accepted with approval the decisions of the Probate Court of Tallapoosa County, Alabama in surcharging the guardian in that case, father of his wards, for all such losses as they had suffered while he was guardian and while he had, individually, used their lands: 104 U.S. at 537–538, at 26 L.Ed. p. 837.

> The accounts, as originally filed by the guardian, are based upon the principle of crediting the wards with the net proceeds of the operation of their plantations, carried on for them by their father, while the accounts, as settled by the probate court, charge him with the risks and losses of the business as carried on, requiring him to account as if he had rented the plantations and hired the slaves for his own use, at such sums as he might have obtained from others.

> It seems not to be denied, that the latter, under the laws of Alabama, was a proper mode and basis of settlement, unless the guardian could show some previous special authority for carrying on the operations of the plantation in the name and at the risk of his wards.

> In the settlement of Micou's accounts it was claimed on his behalf and as a justification of his account as filed by himself, that such special authority existed; and to prove this, there was produced an order of the Probate Court of Tallapoosa County, dated July 18, 1859, which, it was claimed, contained such authority. It appears from a copy of that order, exhibited with the bill, that on November 22, 1858, Benjamin H. Micou, as guardian of his daughters, filed a petition, setting forth that it was to the interest of said minors that the slaves belonging to them be kept together and worked on a plantation, instead of hired out, and that for said purposes it was necessary to purchase a plantation on which to work said slaves, and to the interest of said minors so to do; suggesting that he had contracted for the purchase of a described tract for the purpose aforesaid, and praying for an order authorizing him to purchase and pay for the same. . . .

> \*     \*     \*     \*     \*     \*

> On June 23, 1859, the guardian made report of the authorized purchase, and of the payment of the price, and that a title had been made to the lands. This report was approved and confirmed by an order of the court, made July 18, 1859. But it does not appear that any further order was made by the court, directing or authorizing the guardian to keep the slaves of his wards together and work them on

their plantation, at their risk and expense, instead of hiring them out and renting the lands. And the probate court decided, in the matter of the final settlement of his accounts, that the order to purchase the additional land, of December 20, 1858, relied on as authority for so doing, did not have such effect; and the judge accordingly adjusted the account and found the balance due on the principle stated.

Here, Beach, as guardian, is cast with the risk of such losses not only by his self-dealing, but because he was in fact a lessee of his wards' property without having given or obtained security for the rent. He must, therefore, as guardian, be liable for the loss suffered, despite his bankruptcy discharge, when the rent was not accounted for.

An appropriate Order will enter.