[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1361 
This is an appeal from a judgment in consolidated actions for the construction of the wills of Hubert W. Matthews ("Testator") and his wife Hattie Lee Guess Matthews ("Testatrix"). We affirm in part and reverse in part and remand.
There are three issues which we answer as follows:
I. Was the trial court correct in holding that ITEM THREE of each will does not violate the Rule Against Perpetuities? Yes.
II. Was the trial court correct in holding that the term "my daughter's children" in each will does not include certain adopted children? No.
III. Was the trial court correct in assessing attorneys' fees for all parties against the trust estates of the Testator and the Testatrix? No.
The wills of the Testator and the Testatrix were executed in 1958. The Testator died on September 1, 1960, and the Testatrix died on January 5, 1966.
Both issues I and II, regarding the construction of the wills, arise from ITEM THREE, which in each will is substantially the same. The following is ITEM THREE of the Testatrix's will:
 "ITEM THREE: All the rest and residue of my estate, real, personal or mixed, I give, devise and bequeath to my husband Hubert W. Matthews [my wife Hattie Lee Matthews, and my nephew, Cecil J. Matthews] in trust, for the following uses and purposes:
 (a) For and during the lifetime of my daughter Harriet Matthews Cole, the income from the trust estate shall be paid *Page 1362 
annually or in more frequent installments to my said daughter.
 (b) Upon the death of my daughter my trustees shall continue to hold and manage said trust estate and shall pay the income therefrom in equal shares, per stirpes, to my daughter's children for their education, support and maintenance. At the time each of my daughter's children attains the age of twenty-five years my trustees shall pay one half of the share of the trust estate to said child and the remaining one half at the time said child attains the age of thirty-five years. When the last of my daughter's children attains the age of thirty-five years the trust shall terminate. If any of my daughter's children die before receiving his or her share of the trust estate and leaving no bodily heirs, said share shall in that event be divided equally among the surviving children and shall be merged with and administered in like manner to other property held for him or her. . . ." [Italics supplied.]
ITEM THREE of the Testator's will contains the bracketed language instead of "my husband Hubert W. Matthews," and it contains a provision for payment of the income of the trust to his wife during her lifetime and then to his daughter during her lifetime. Section (b) above is identical to section (c) inthe will of the testator.
The Testatrix was survived by her only child, Harriet Matthews Cole Zimmerman, who died on December 13, 1972. Harriet was survived by three children of a prior marriage to William H. Cole and by two children of her marriage to Miles Raymond Zimmerman, to whom she was married at the time of her death.
William H. Cole, Jr., a natural child was 27 years old at the time of his mother's death. Harriet Lee Cole Wiltsie ("Lee") was adopted in 1948 and was 25 years old at the time of her mother's death. Hubert M. Cole, also a natural child, was 21 years old at the time of his mother's death.
Bonnie Gale Zimmerman was adopted on August 30, 1965, the final decree being entered on April 3, 1967, and was seven years old at the time of her mother's death. Miles R. Zimmerman, Jr., was adopted on April 27, 1966, the final decree being entered on January 29, 1968, and was six years old at the time of his mother's death.
Both testators were fully aware of the adoption of Lee and had, in fact, been instrumental in her adoption. Lee lived in the home of the testators from the date of her adoption until shortly before the death of the Testator. She was accepted as a grandchild by the testators and was treated in the same manner as the two natural grandchildren.
Mr. W.H. Sadler, who had prepared both wills in 1958, testified without contradiction that he was instructed by the Testator to establish a trust for Harriet's three children. Harriet's only children at that time were William, Jr., Hubert, and Lee. The Testator also directed Mr. Sadler as to the terms of the Testatrix's will.
The Testator died before the adoption or even the birth of either of the Zimmerman children. The Testatrix died before the final adoption decree was entered for Bonnie Gale and before Miles, Jr., was born. The adoption of Bonnie Gale was begun about six months before the death of the Testatrix, who had, however, been completely senile for a period of three to four years prior to her death. There is no evidence that she was ever fully aware of Bonnie Gale.
After the death of the daughter Harriet, the First National Bank of Birmingham, as Trustee under the will of Hubert W. Matthews and as Trustee under the will of Hattie Lee Guess Matthews, brought the present actions for declaratory judgments construing the wills.
The trial court rendered the following judgment, inter alia:
(1) "The provisions of ITEM THREE of the subject wills are not violative of the Rule Against Perpetuities"; (2) "Harriet Lee Cole Wiltsie, the adopted daughter of Harriet Matthews (Cole) Zimmerman, is included in the term `my daughter's children' as used in ITEM THREE of the subject wills," but "Bonnie Gale Zimmerman *Page 1363 
and Miles Raymond Zimmerman, Jr., also the adopted children of Harriet Matthews Zimmerman, are not included in the term `my daughter's children' as used in Item Three of the subject wills;" and (3) attorneys' fees for attorneys representing all the parties to the two actions "shall be paid equally by the testamentary trusts created by Hubert W. Matthews and Hattie Lee Guess Matthews."
Appeals have been taken from the judgment by the Zimmerman children, by the First National Bank of Birmingham, as Executor under the will of Harriet Matthews Cole Zimmerman ("Executor"), by a representative of unknown heirs and parties, and by Miles Raymond Zimmerman, individually and as guardian for the Zimmerman children.
The First National Bank, as Trustee under the wills of the Testator and the Testatrix ("Trustee"), has appealed the order directing it to pay all attorneys' fees from the trust estates.
 I. Rule Against Perpetuities
The trial court's rationale for its holding that ITEM THREE does not violate the Rule Against Perpetuities is summarized in the following paragraph from the court's final decree:
 "Applying the rule against perpetuities to the bequest found in ITEM THREE, it is apparent that the interest will vest within the period of the rule. Summarizing the application of the rule briefly, Hattie Lee Guess Matthews and Harriet Matthews Zimmerman are the measuring lives for purposes of this rule. Upon the death of Hubert W. Matthews, the interest will vest in the children of his daughter, but subject to open if additional children are later born. Upon the death of Harriet Matthews Zimmerman, the class of `children' is finally ascertained and closed because of the fact that it would be impossible for Harriet Matthews Zimmerman to have additional children after the time of her death. At this time, the interest immediately and finally vests in those children who are in being. Since the interest vests no later than the death of Harriet Matthews Zimmerman, the life in being, it vests within the time period set forth in the rule against perpetuities; i.e., 21 years after some life in being. Thus, the requirements of the rule are satisfied."
As appellant on this issue, the Executor (under Harriet's will) relies primarily on the provision of ITEM THREE that if any child died leaving no bodily heirs his share would be divided equally among the surviving children and merged with and administered with the other property held for the survivors. The Executor argues that this provision indicates that the interests were not to vest until each child reached age 25 and age 35 and that consequently the interests might not vest within the Perpetuities period.
We hold that the gifts to "my daughter's children" in the wills of the Testator and the Testatrix do not violate the Rule Against Perpetuities.
Unless the testator clearly expresses an intention to the contrary, remainders are construed as vesting at the earliest possible moment, generally the death of the testator. Springerv. Vickers, 259 Ala. 465, 66 So.2d 740 (1953).
In the wills under consideration, there are certain provisions which might appear, at first blush, to indicate an intention to postpone vesting. We are thus confronted with the issues as to whether such an intention is expressed and, if it is, whether the time set for vesting is too remote.
The first provision which might appear to indicate an intention to postpone vesting is the clause which says, "If any of my daughter's children die before receiving his or her share . . . leaving no bodily heirs, said share shall in that event be divided equally among the surviving children. . . ." [Italics supplied.] This clause does not, however, indicate a clear intention to postpone vesting. Thus, the following rule of construction applies:
 ". . . When conditional language in a transfer (i.e., `but if,' `provided that,' *Page 1364 etc.) follows language which, taken alone, would be said to create a vested remainder, the condition so created is a condition subsequent. If, however, the conditional language appears before the language creating the remainder, or the conditional language appears to be part of the description of the person receiving the remainder (the remainderman), the condition created thereby is a condition precedent. . . ."
Bergin Haskell, Preface to Estates in Land and Future Interests 75 (1966).
The clause under consideration here follows language which, as will be seen, would, if taken alone, be said to create a vested remainder. Thus, the clause is a condition subsequent, which may operate to divest the vested interest of any of the children should he or she not live long enough to receive his or her share. Id. at 74. See also Gray, The Rule Against Perpetuities § 108 (4th ed. 1942). The interest created, we hold, is a vested interest subject to complete divestment, or total defeasance, and does not violate the Rule Against Perpetuities. Crawford v. Carlisle, 206 Ala. 379, 388,89 So. 565 (1921); Simes Smith, The Law of Future Interests §§ 113, 1269 (2d ed. 1956).
A caveat is in order, however. Although the gift to "my daughter's children" is good because vested, the divestingprovision and the executory gift over are, according to these authorities, bad because based upon a contingency which may occur too remotely. There is no occasion, however, to pass upon this issue because the divesting contingency has not occurred.Crawford v. Carlisle, supra.
The second provision which might appear to indicate an intention to postpone vesting is the clause which says, "At the time each of my daughter's children attains the age of twenty-five years my trustees shall pay one half of the share of the trust estate to said child and the remaining one half at the time said child attains the age of thirty-five years." This language does not, however, clearly indicate an intention on the part of the testators to postpone vesting until the times set, but merely indicates the times at which each child's share of the corpus is to be paid or distributed. The applicable rule of construction is that, if futurity is annexed to the substance of the gift, it is contingent, but if annexed to the time of payment, enjoyment, or delivery of possession, it isvested. Austin v. Pepperman, 278 Ala. 551, 562, 179 So.2d 299
(1965); Crawford v. Carlisle, supra. Cf. Simes Smith, supra at § 586.
The final provision which might indicate an intention to postpone vesting is that which makes the gift a class gift to "my daughter's children." Because Harriet survived the testators, the size of the class was uncertain at the death of the testators. The rule of construction applicable to this provision is stated in Blue v. Davis, 273 Ala. 450, 452,142 So.2d 702, 704 (1962):
 ". . . [I]n the absence of a clear expression of a contrary intention on the part of the grantor, a remainder to the children of a life tenant is a remainder to a class, the members being composed of all the children of the life tenant without regard to the time of birth. . . ."
* * * * * *
 "The principle is thus stated in I Simes, Law of Future Interests, § 76, p. 120:
 `A remainder limited without words of condition to a class of persons, one or more of whom is in existence and ascertained, is vested, though subject to be divested in part by the coming into existence or ascertainment of other members of the class.'"
The interest thus created has been designated a vestedremainder subject to open, or to partial divestment. Bergin 
Haskell, supra at 73; Gray, supra at § 110.1; Simes Smith, supra at §§ 114, 146. Nevertheless, the interest may not be said to be vested at the death of the testator for purposes ofthe Rule Against Perpetuities. As this Court said in Crawfordv. Carlisle, supra, 206 Ala. at 386, 388, 89 So. at 572-573,574:
 ". . . [W]hen a future estate or interest in property is given to a class, and such estate or interest is vested in *Page 1365 
certain members of the class subject to open and let in other members born afterwards, or afterwards fulfilling a condition . . . the shares in such remainder or interest will be obnoxious to the rule against perpetuities if their number, and therefore their size, may not be determinable until too remote a period. . . ."
* * * * * *
 "This class of remainders as the rule against perpetuities touches may not always be placed under the head of or in the class of vested remainders. For there may be remainder that is vested only in so far as it is certain that whenever and however the preceding estate determines there will be one or more persons who will come into possession thereof, `but in so far as it is not certain what the number of those persons will be, or, in other words as the number and consequent size of the shares,' it is contingent; and such remainder cannot be said to be vested as respects the rule against perpetuities. The imperfect character of the vesting in such class or classes is illustrated by Mr. Gray, and, as he said, is brought out by the application of the rule that interests or estates in all respects vested `never come within the rule, but when there is a gift in remainder to a class which has become vested in a living person, if the number of persons who will finally constitute the class may not be determined until a remote period, the remainder is void. . . . This is apparently an exception to the rule that vested interests are never too remote, but in truth remainders of this sort, although called vested, are not really so; at a certain point, and on the point which the rule against perpetuities touches, they are, in fact, contingent.' Sections 110a, 205a, 205b."
Although the remainder in this case did not, for purposes of the Rule Against Perpetuities, "vest" at the death of the testators, the size of the class was certain to be determined well within the time allowed by the Rule. The size of the class would be finally determined at the death of Harriet, the life tenant, because the class consisted of her children and obviously she could have no more children after her death. Consequently, the remainder would and did "vest," for purposes of the Rule, upon the death of Harriet. See Simes Smith, supra at § 640.
Therefore, we affirm the trial court's holding that the gift to "my daughter's children" does not violate the Rule Against Perpetuities.
 II. "My Daughter's Children"
The trial court's holding that the Zimmerman children are not included in "my daughter's children" and that Lee Wiltsie is included is based on its analysis of relevant Alabama cases, from which it drew the following conclusion:
 ". . . [T]he criterion to be satisfied in determining whether or not an adopted child should take under a class gift to `my children' is:
 (1) That the child must have been in contemplation by the testator at the time his will was executed;
 (2) That the testator knew of or was otherwise aware of the adoption of the child or that the child was in being; and
 (3) That the testator treated or otherwise regarded the child as a member of his family and to all human appearance recognized the child as an object of his solicitude and bounty. . . ."
The Zimmerman children and those aligned with their interests, as appellants with respect to this aspect of the trial court's judgment, contend basically that Alabama case law concerning adopted children should be modified so that adopted children are treated exactly as natural children, unless a contrary intent clearly appears.
The modification urged by the appellants was effected, after this case was orally argued and submitted, in McCaleb v. Brown,344 So.2d 485 (Ala. 1977), in which this Court held that an adopted child "is presumptively within the designation of the *Page 1366 
adopter's descendants unless the context or circumstances clearly establish a contrary intention." Since the term "descendants" includes children, we can see no reason for following a different rule with respect to the term "children." There being no indication of contrary intention on the part of the testators, we hold that the phrase "my daughter's children" in both wills includes adopted children.
The most cogent argument for reaching a different result is that the testators may have relied on our previous case law that the term "children" does not include adopted children. SeeWhitfield v. Matthews, 334 So.2d 876, 878 (Ala. 1976). This argument is vitiated in this case because there is testimony to the effect that the testators intended that the phrase "my daughter's children" include adopted children. When the wills were executed, one of the testators' daughter's children was, in fact, adopted. The wills spoke of Harriet's children in terms of "him or her," but Harriet's adopted child was her only female child then existing. Furthermore, Mr. Sadler testified that the Testator indicated to him that he intended for the adopted child Lee to be included in the class "my daughter's children." Since the testators obviously intended for one adopted child to be included in the class, they saw no need to mention specifically that the term "my daughter's children" was meant to include adopted children.
Even under our previous case law, Lee would probably have been included in the class "my daughter's children" without a specific mention in the will. But, surely any scrivener who had those previous cases in mind would not have left the inclusion of an adopted child to an event as unpredictable as a court's interpretation of the testator's intent. Apparently, the testators were not relying on our previous holdings that "children" does not include adopted children, but were using the term as it is commonly used to include all children, whether natural or adopted.
Therefore, we reverse the trial court's holding that the class "my daughter's children" does not include Bonnie Gale Zimmerman and Miles Raymond Zimmerman, Jr.
 III. Attorneys' Fees
The trial court did not cite any authority for its order directing payment of all attorneys' fees out of the trust estates. All parties to the appeal of this order agree, however, that the principal issue is whether the court's action is authorized by Tit. 46, § 63, Code of Alabama 1940 (Recompiled 1958):
 "In all suits and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust, or where there is involved the sale of property for distribution, or where there is a partition in kind of real or personal property between tenants in common, the court having jurisdiction of such suit or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust, joint, or common property, or any party in the suit or proceeding, and is authorized to tax as a part of the costs in such suit or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court and to be a lien on the several parts in case of partition in kind." [Italics supplied.]
On its appeal of this order, the Trustee contends, and we here hold, that under Tit. 46, § 63, the trial court has the power to charge a trust with attorneys' fees for services rendered for the common benefit of the beneficiaries of the trust, but not for services rendered in opposition to the validity of the trust or for services rendered in behalf of individual interests only.
The appellees on the appeal of this order contend that Tit. 46, § 63, does not require that services be rendered for the common benefit, but authorizes payment of attorneys' fees for "any party in the suit or proceeding". *Page 1367 
All parties agree that the trial court properly awarded attorneys' fees for guardians ad litem appointed under Rule 17 (d), ARCP.
According to a well-established line of cases,
 "[s]ection 63, Title 46, Code, is largely an enactment of the ancient principle of equitable origin, and there enforceable, which was referred to as costs between solicitor and client and said statute makes it apply at law as well as in equity when justified. That principle is that a complainant in equity, who at his own expense has maintained a successful suit for the preservation protection or increase of a common fund or of common property, or who has created at his own expense or brought into court a fund in which others may share, may have paid to him, or sometimes directly to his attorney, an attorney's fee for such services. . ."
Penney v. Pritchard McCall, 255 Ala. 13, 17, 49 So.2d 782,784 (1950). Or, as stated in Pate v. Law, 277 Ala. 608, 612,173 So.2d 596 (1965),
 "[t]he allowance of attorney's fees under . . . [Tit. 46, § 63] is on the basis of, and solely for, benefits inuring to the common estate, and the tenants in common. Owens v. Bolt, 218 Ala. 344, 118 So. 590; Dent v. Foy, 214 Ala. 243, 107 So. 210; Snead v. Lee, 218 Ala. 44, 117 So. 469. This does not include a controversy as to the respective rights or interests of the tenants in common [or, in the case of a trust, the beneficiaries], and to permit counsel for respondent to have a fee out of the common estate, he must have been employed to render, and did perform some service for the common estate, which in due course of the proceeding other counsel had not been employed to perform. Matthews v. Lytle, 220 Ala. 78, 124 So. 197."
In Troy Bank Trust Co. v. Brantley, 263 Ala. 428,82 So.2d 618 (1955), Justice Mayfield, with Justice Simpson concurring in his opinion, unsuccessfully attempted to overrule this line of cases. Although a majority of the Court concurred in the result reached by Justice Mayfield, a majority did not concur in his construction of Tit. 46, § 63. Moreover, this Court has, in subsequent opinions, adhered to the common-benefit rule. See, e.g., McCulloch v. Roberts, 292 Ala. 451, 296 So.2d 163
(1974); Pate v. Law, supra.
We must reject the appellees' contention that services rendered in opposition to the validity of the trust or in behalf of individual interests were for the common benefit. The services rendered must be for the common benefit of all the beneficiaries. Farmers' Bank Trust Co. v. Borroughs, 217 Ala. 97,99, 114 So. 909 (1927). Neither destroying the trusts nor increasing the number of beneficiaries can reasonably be regarded as benefitting all the beneficiaries. It is therefore that we reverse the trial court's judgment awarding fees to attorneys for all parties out of the trust estates.
In conclusion, we affirm the trial court's judgment holding that ITEM THREE of each will does not violate the Rule Against Perpetuities, and, reverse and remand the judgment holding that the wills do not include certain adopted children and awarding attorney's fees to all parties. We remand for entry of a judgment in conformity herewith.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and JONES, ALMON and EMBRY, JJ., concur. *Page 1368