362 So.2d 854 (1978)
SOUTHSIDE BAPTIST CHURCH et al.
v.
James L. DRENNEN.
Agnes Irvine PACKER et al.
v.
James L. DRENNEN.
77-130, 77-175.
Supreme Court of Alabama.
September 8, 1978.
Rehearing Denied September 29, 1978.
Norman W. Harris of Harris, Harris, Shinn & Harris, Decatur, for Southside Baptist Church, et al.
*855 Jack R. Thompson, Jr., Birmingham, for appellants, Agnes Irvine Packer and Kate Irvine Thompson.
Thomas G. Steele, Athens, for Malone, Steele, Alexander & Corder, for appellee.
JONES, Justice.
This appeal arises from an action to quiet title to certain land in Limestone County. In making its determination, the trial Court necessarily construed provisions of the Will of George S. Houston, pertaining to the meaning of the term "lawful issue." The Court held that adopted children were included within the term "lawful issue" and that such adopted children would thus take under the provisions of the Will. We affirm.
The undisputed facts, stipulated at trial, indicate that George S. Houston executed a will in 1928 and died in 1934. His wife, Maggie Irvine Houston, having predeceased him, Houston was survived by two sisters (one of whom was a half-sister) and two nephews. One nephew, Charles E. Drennen, adopted Plaintiff-Appellee, James L. Drennen, in 1947. Charles died in 1960 and Houston Drennen, George Houston's other nephew, died in 1961each leaving a will. Charles devised all his property to Appellee and his widow (who has quitclaimed her interests to Appellee). Houston Drennen died without children and devised all his property to his widow. She died and left whatever interest she had in the land in question to the Church Appellants.
As stated, stipulations of facts were entered at trial. Stipulation 14 provides:
"14. At the time of the death of Ellen Irvine Tolley there was no person in existence who was a blood relative of the said George S. Houston."
Stipulation 17 provides, inter alia:
". . . Kate Irvine Thompson and Agnes Irvine Packer are the closest living blood kin of Maggie Irvine Houston and Emma Houston Drennen and were such at the time of the death of Ellen Irvine Tolley."
Ellen Irvine Tolley occupied the land as a life tenant until her death. This suit followed.
The pertinent provisions of George Houston's Will are contained in "Item 2" thereof. It provides, inter alia:
"After the death of my wife, I want Ellen Irvine, my wife's niece, who has lived with us for many years, to have the use of the house at Belle Mina, Alabama, so long as she may choose to use it for her home. While she is so using the house, she may also have the use of the whole Section 29. In allowing the said Ellen Irvine the use of the property above set out, she must use the rents and income, as far as may be necessary, to keep the house and farm buildings in a good state of repair and properly protect them by insurance, and pay all taxes against the property. My purpose is to provide a home for Ellen Irvine for and during her natural life. But should she decide at any time not to live on the farm as her home, then upon her abandonment of the farm as her home, or upon her death, should she continue to live there until she dies, the said house and land as above set out, shall at once pass to my two sisters, Mary Ella Houston and Emma Houston Drennen of Birmingham, Alabama, in fee simple, share and share alike, or to the survivor of them. Should they both die before the said Ellen Irvine or should they both be dead at the time she abandons the farm as her home, the said house and land shall go to my nephews, Houston and Charles Drennen, in fee simple, share and share alike. Should either of my said nephews die before the said Ellen Irvine, leaving lawful issue, then said issue shall take the share that the deceased parent would have taken. Should he not leave lawful issue, then the whole place shall go to the survivor. Should both of my said nephews die before the said Ellen Irvine, leaving lawful issue, then said issue shall take, share and share alike. Should both of my said nephews die before the said Ellen Irvine, without lawful issue, or should they both be dead without lawful issue surviving them, when *856 the said Ellen Irvine abandons the farm, then in either event I give the home and land to any of my kindred then living, share and share alike." (Emphasis added.)
At Ellen Irvine Tolley's death, Mary Ella Houston, Emma Houston Drennen, Houston Drennen and Charles E. Drennen were all deceased. It is undisputed that should this Court deem James Drennen, Appellee, the lawful issue of Charles Drennen, no further question need be decided because such holding would clearly be dispositive.
Initially, it should be pointed out that Appellee has filed a Motion to Dismiss the Appeal of Agnes Irvine Packer and Kate Irvine Thompson as being untimely. Following trial, the Court entered its judgment on September 27, 1977. The Church Defendants filed a Motion to Amend the Judgment on October 11, pertaining to its cross-claim and costs of trial. The Court amended its judgment on October 31 and the Church Appellants filed their Notice of Appeal on November 8. Packer and Thompson filed their Notice of Appeal on November 2862 days after the original judgment.
Appellee asserts that such notice was untimely because it violated Rule 4(a), ARAP. The tolling provision, he contends, is inapplicable because the post-judgment motion did not pertain to those parties. This argument is fallacious, however, because the original judgment was not final in that all the rights and liabilities of all the parties had not been adjudicated at that time. As we stated in Nelson-American Developers, Ltd. v. Enco Engineering Corp., 295 Ala. 185, 326 So.2d 103 (1976).
". . . Nowhere do we find therein any `express determination that there is no just reason for delay and upon an express direction for the entry of judgment' in accordance with the mandate of Rule 54(b) A.R.C.P.
"When there are multiple parties (as here) and multiple claims (as here) the rule requires such determination and direction for the reason that the order entered is interlocutory and `is subject to revision at any time before a judgment which adjudicates all the rights and liabilities of all the parties. Because it is subject to revision, it is not a final judgment and will not support an appeal.'" 295 Ala., at 187, 326 So.2d at 104.
See also Simpson v. First Alabama Bank of Montgomery, 345 So.2d 292 (Ala. 1977). Therefore, the appeal would not lie until entry of the amended judgment and the Motion to Dismiss the Appeal is not well taken.
In the case-in-chief, Appellants contend that the law, at the time of the execution of the Will, did not include adopted children within the term "lawful issue." In support of this contention, they cite Russell v. Russell, 84 Ala. 48, 3 So. 900 (1887). Thus, they argue, the testator did not intend to include such persons within that class.
It is well settled that the intention of the testator is the polestar to guide a court in the construction of a Will. That is the law of the instrument and, in arriving at this intent, the Court should consider the instrument as a whole. Perdue v. Roberts, 294 Ala. 194, 314 So.2d 280 (1975); and Blackwell v. Burketts, 251 Ala. 233, 36 So.2d 326 (1948). Where latent ambiguities arise, the intent of the testator may be ascertained not only by the writing itself, but also by attending facts and circumstances. First National Bank of Birmingham v. Klein, 285 Ala. 505, 234 So.2d 42 (1970); and 86 A.L.R.2d 12, § 3.
At the time the Will was executed, adopted children were generally not included in the term "lawful issue." See Russell, supra. Before the testator's death, however, the Legislature had passed, in 1931, a statute which permitted adopted children to inherit property by and through their adoptive parents. 1931 Ala. Acts, p. 504-8. Though not expressly controlling the provision before us, such statute is instructive as to the public policy of both that time and the present. See McCaleb v. Brown, 344 So.2d 485 (Ala. 1977).
In McCaleb, we stated:

*857 "Therefore, we hold consistent with the adoption statute which creates a parent-child relationship between the adopter and the adoptee, that the latter is presumptively within the designation of the adopter's descendants unless the context or circumstances clearly establish a contrary intention." 344 So.2d, at 489. (Emphasis added.)
We can see no reason for following a different rule with respect to the term "lawful issue." Thus, unless there clearly appears language or circumstances by which the testator foreclosed operation of the presumption, adopted children are included within the term "lawful issue."
The Will, when read as a whole, does not indicate whether the testator intended to include, vel non, adopted children within the term "lawful issue." The surrounding circumstances relate merely to the scrivener's apparent abilities and the law of that time.
"[Appellants] argue, however, that the controversy can be resolved merely by looking at the word `issue', which in their view has an established legal meaning that excludes adopted children. We disagree. Our cases have seldom discussed the term in relation to adoption, and enough uncertainty surrounds its usage that we doubt a competent draftsman who wanted to exclude adopted children would rely on the word `issue' alone to express that purpose." Johns v. Cobb, 131 U.S.App.D.C. 85, 402 F.2d 636 (1968).
The evidence here is insufficient to "clearly establish a contrary intention." Therefore, adopted children, under the circumstances and facts as here presented, are included within the term "lawful issue" and, as such, James Drennen owns a fee interest in the property in question. This is in keeping with the strong public policy, expressed in both statutory and case law, equating adopted and natural children. See § 26-10-5(c), Code (1975); McCaleb, supra. Of course, our ruling does not foreclose the possibility of exclusion in subsequent cases wherein a more definite intent to exclude may be proved. See generally Zimmerman v. First National Bank of Birmingham, 348 So.2d 1359 (Ala. 1977).
The judgment of the trial Court is affirmed.
AFFIRMED.
FAULKNER, J., concurs.
MADDOX, SHORES, EMBRY and BEATTY, JJ., concur specially.
TORBERT, C. J., and BLOODWORTH and ALMON, JJ., dissent.
MADDOX, Justice (concurring specially).
I concur in the result reached.
A state has the inherent right to regulate alienation, devise or descent of land within its borders. Phillips v. Phillips, 213 Ala. 27, 104 So. 234 (1925). The clear policy of this state, at least since passage of the Adoption Act, Act No. 405, in 1931, is that an adopted child has the same rights of inheritance to real estate or to the distribution of the personal estate of the adoptive parent "as if born . . . in lawful wedlock." In other words, I think our statutory system of giving an adopted child the same rights of inheritance as one "born . . . in lawful wedlock" necessarily, in cases where the testator's intention is not clear, supplies the intention; that is, the adopted child takes by designation of the system. Furthermore, a will speaks as of the date of the death of the testator, Murphy v. Traylor, 292 Ala. 78, 289 So.2d 584 (1974), and even though Mr. Houston made his will prior to the enactment of Act No. 405 in 1931, his death occurred after the passage of that Act. In my opinion, the Adoption Act would affect all wills involving adopted children where the death of the testator occurred after the passage of that Act, regardless of when the will was executed, because of the rule that a will speaks as of the date of the death of the testator and because the rule of statutory construction that the words of a legislative enactment will not be given retroactive effect unless the language used permits no other reasonable construction, does not apply in the construction of wills. 95 C.J.S., Wills, § 629, p. 894.
*858 Alabama's statutory scheme entitles an adopted child to succeed to the estate of the adopting parent in the same manner as if it had been a natural child of that parent; therefore, I think that Mr. Houston's use of the term "issue" meant that he intended to include an adopted child, even though the child was adopted after the will was made and Mr. Houston was dead. Re Heard's Estate, 49 Cal.2d 514, 319 P.2d 637 (1957).
BEATTY, Justice (concurring specially).
To affirm this case on the reasoning of the majority opinion, while reaching perhaps an immediately favorable result, would set an undesirable precedent in the already tenuous area of testamentary construction.
A brief review of the pertinent facts shows that in 1928 the testator, George S. Houston, executed a will which in essence left a life estate followed by a series of future interests contingent upon survival of the life tenant in his Belle Mina, Alabama farm. The clause in question provided that:
Should both of my said nephews die before the said [life tenant], leaving lawful issue, then said issue shall take, share and share alike. . . (emphasis added)

In 1931 the Legislature passed 1931 Alabama Acts, p. 504-8, which was intended to give an adopted child the rights of inheritance from his adopting parents as if born to them in lawful wedlock. In 1934 George S. Houston died and was survived by one half-sister and one full sister and his two nephews. His wife's niece, Ellen Irvine Tolley, went into possession of the estate as life tenant and remained such until her death. In 1947 one of the nephews, Charles E. Drennen, adopted the appellee, James L. Drennen. Charles died in 1960, and his brother, Houston, died in 1961, neither leaving any other natural or adopted children. In 1976 the appellee brought an action to quiet title to the land in question. In that action the trial court construed the terms "lawful issue" to include the appellee. Appellants Packer and Thompson, nieces of the testator on his wife's side, appealed the trial court's decision. In essence this Court is called upon to decide whether or not in his will the testator intended a subsequently adopted child to be included within the terms "lawful issue."
The majority is correct in their finding that "lawful issue" included adopted children in this instance. However, the majority holding that the testator's testamentary intent in 1928 was to that effect because in 1931 the Legislature said something vaguely connected to this area of law is tenuous. It is not necessary to hold that a statute passed subsequent to the execution of a will is instructive as to the public policy prevailing previously at the time the will was executed and when the testator's intentions were formed. The will in this case was executed three years before the enactment of the statute cited by the majority.
I do not believe that the statute cited can throw light on the "policy" prevailing at that time anyway. The pertinent portion of the statute recites:
[A]nd the child shall be invested with the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock. . . . (1931 Ala. Acts. No. 405, p. 504)
Aside from having nothing to do with testate succession, this statute on its face would not apply to the fact situation at hand even if the testator had died intestate. The appellee was not the adopted child of the testator. "Adopted children do not inherit from collaterals." Gamble v. Cloud, 263 Ala. 336, 82 So.2d 526 (1955). Hence, the appellee takes, if he takes at all, via the will as "lawful issue" of his father as that term was intended by the testator at the time of the execution of the will.
McCaleb v. Brown, 344 So.2d 485 (Ala. 1977) and Zimmerman v. First National Bank of Birmingham, 348 So.2d 1359 (Ala. 1977) are inapposite. Though both of those cases reflect, perhaps, the pervading policy today on adopted children as limited by statute, they should not be interpreted as delineating public policy beyond the parent-child *859 relationship expressly required in the 1931 statute.
On the interpretation of "lawful issue," Wright v. City of Tuscaloosa, 236 Ala. 374, 182 So. 72 (1938) held:
"In its legal sense, as used in statutes, will, deeds, and other instruments, `issue' means descendants; lineal descendants; offspring." . . . (emphasis added)

A "descendant," as we held in McCaleb v. Brown, supra, is "`[o]ne on whom the law has cast the property by descent'." 344 So.2d 485, at 488. Hence if we interpreted the meaning of "lawful issue" at the time of the execution of the will in 1928 then it is clear "lawful issue" would not include an adopted child. At least, it is just as inferable (and consistent with the law at the time) that his intention was to have his "lawful issue" determined as of the time the provision took effect if, indeed, it did take effect. Therefore, I believe that by using "lawful issue" the testator's intention was to make a class gift.
"A class gift is one in which the donor intends to benefit a group or a class of persons. . . ." Bergin & Haskell, Preface to Estates in Land and Future Interests, at 138. Henry v. Griffith, 242 Ala. 598, 7 So.2d 560 (1942).
Although none of the parties raised the issue it is clear from the will that the testator intended that there be a class gift to the "lawful issue" of his nephews, Charles and Houston Drennen "share and share alike" if neither of the nephews survived the life tenant. Neither did. As there was no living issue at the time of the execution, nor at testator's death, under common principles it is clear that the class could not open until the death of the testator in 1934. The better view, however, in light of the language of the will, would see the class both opened and closed at the death of the last of the surviving nephews in 1961 (both having died before the life tenant). This is so because until the death of his uncle in 1961assuming both of the testator's sisters had predeceased the nephewsthe appellant had at most an undivided vested remainder in one-half of the property subject to partial divestment if his uncle had issue and predeceased the life tenant. When the uncle died without issue the class opened and appellant immediately became the only member of the class, and the class closed vesting in him, again assuming the sisters had already gone to their reward, the remainder in fee simple in the whole estate. If the class members were not to be determined, if at all, until events subsequent to the will's execution, then it is certainly difficult to believe otherwise than that the testator intended the membership of that class to be determined at the time that the class should close whether by rule of convenience or because it was biologically closed as here which, as events showed, was after the 1931 statute and indeed after the death of testator.
Using this reasoning on the dispositive issue in this case we could uphold the law, reach the desired result, and avoid many future problems the majority opinion would unleash. Perhaps the chief problem would entail requiring a testator to foresee future legislation on intestate succession affecting the testamentary field. I do not believe we should require the testator and his scrivener to engage in prestidigitation so that they might clearly express intentions contrary to legislative policy not yet articulated, or to require the testator, once such a legislative policy has been stated, regardless of how difficult it would be to even know whether or not such a policy, or even what policy, has been stated, to change provisions in his will to take himself out of the purview of that policy. This is a great burden indeed, and one this case needn't require. If we do require it, lawyers who draft wills had better exercise adroitness in creating savings clauses against such policy decisions.
SHORES and EMBRY, JJ., concur.
TORBERT, Chief Justice (dissenting).
I respectfully dissent. As noted by the majority, the primary rule in construing a will is to determine the intent of the testator and give it effect. Blackwell v. Burketts, 251 Ala. 233, 36 So.2d 326 (1948). However, rather than apply a statute enacted *860 by the Legislature three years after the execution of the will at issue, as did the majority, I would look to the law in existence in 1928, the time of the execution of the will, to determine whether the testator intended the term "lawful issue" to include an adopted child of one of his nephews.
The case law and statutory law in 1928 was clear that only natural children were included within the term "lawful issue." Russell v. Russell, 84 Ala. 48, 3 So. 900 (1888). In choosing the language to express his actual intent, the testator, and the attorney who drew his will, no doubt relied upon this interpretation as being the generally accepted legal meaning of the term "lawful issue." I would therefore hold that James W. Drennen, by reason of being an adopted child, was not intended by the testator to be within the "lawful issue" of Charles E. Drennen under the terms of the 1928 will at issue.
BLOODWORTH, Justice (dissenting).
I dissent from Mr. Justice Jones' majority opinion because I agree with Mr. Justice Beatty's comment in his concurring opinion that such a holding "would set an undesirable precedent in the already tenuous area of testamentary construction."
I cannot agree with the majority that the words "lawful issue" in testator's will (when the same was executed in 1928) include "adopted children" just because in 1931 the legislature passed an act giving an adopted child the rights of inheritance from his adopting parents as if born to them in lawful wedlock.
I think a short history of our case law in this area is appropriate. In Russell v. Russell, 84 Ala. 48, 3 So. 900 (1888), this Court held that a gift to "child" or "children" did not include "adopted children."
Following Russell, this Court held, in Hamilton v. Smith, 264 Ala. 199, 86 So.2d 283 (1956) that the use of the words "born" and "birth" in the pretermission statute was held to be indicative that such statute was intended to apply only to natural children and that an "adopted child" does not fall within the pretermitted heir statute.
Later, in Peck v. Green, 266 Ala. 321, 96 So.2d 169 (1956), this Court held that the words "child or children of any deceased child" in a will did not include the "adopted child" of deceased child of testator.
The 1931 act, (Tit. 27, § 5, Code of Alabama 1940) [now § 26-10-5 Code 1975], is materially different from the statute which existed in 1888 when Russell was decided. The 1931 statute was, in Peck, held not to be controlling, no doubt, in part, because the will in Peck was executed in 1917. The state of the law at the time of that execution was undoubtedly the rule of the Peck case.
As I pointed out in the opinion in Whitfield v. Matthews, 334 So.2d 876 (Ala. 1976) (which I authored for the Court), a testator and his attorney have the right to rely on the existing state of law at the time that a will is executed. In Whitfield, we held that a gift to "`children now or later born to my son'" did not include an "adopted child" of the son.
In McCaleb v. Brown, 344 So.2d 485 (Ala. 1977), in a unanimous decision, we concluded that an "adopted child" is presumptively within the designation of the adopters' "descendants" unless the context or circumstances clearly establish a contrary intention. I think this holding is consistent with our prior holdings. What makes McCaleb clearly distinctive from Peck is that, in Peck, the will was executed before the 1931 statute while, in McCaleb, the deed was executed after the 1931 statute was enacted.
In Zimmerman v. First National Bank of Birmingham, 348 So.2d 1359 (Ala. 1977) (another case I authored for the Court), we held, inter alia, that the phrase "my daughter's children" included persons "adopted" by the daughter, following McCaleb. In Zimmerman, we discussed the contention that testators may have relied on previous case law to the effect that the term "children" does not include "adopted children," the holding of Russell and Peck. We showed that this argument was vitiated, in Zimmerman, because testators had an existing *861 adopted grandchild at the time of execution of the instruments in 1958, and spoke of the daughter's children in terms of "him or her" although the adopted child was the only female child then existing. Thus, it was clear that testators contemplated the term "children" to include "adopted children." Moreover, the instruments in question were executed after the 1931 act.
To summarize, I think our case law up to this point is consistent.
I concur in the views expressed by TORBERT, C. J., and ALMON, J., in their respective dissenting opinions.
ALMON, Justice (dissenting):
I concur in the view expressed by the Chief Justice.
A further comment is in order because of my concurrence in McCaleb v. Brown, 344 So.2d 485 (Ala. 1977) and Zimmerman v. First National Bank of Birmingham, 348 So.2d 1359 (Ala. 1977). In each of these cases the document was drafted after the 1931 amendment to the adoption statute. Scriveners after that date were reasonably put on notice that if adopted children were intended to be excluded then express language to that effect should be employed. On the other hand, scriveners prior to that date should be able to comfortably rely on settled case law.
The fundamental purpose of the law of wills is to provide a means for people to direct the disposition of their property after death. To change the rules of construction after a will is drafted will unnecessarily thwart the intended property disposition.
I, therefore, respectfully dissent.