This appeal arises from an action to quiet title to certain land in Limestone County. In making its determination, the trial Court necessarily construed provisions of the Will of George S. Houston, pertaining to the meaning of the term "lawful issue." The Court held that adopted children were included within the term "lawful issue" and that such adopted children would thus take under the provisions of the Will. We affirm.
The undisputed facts, stipulated at trial, indicate that George S. Houston executed a will in 1928 and died in 1934. His wife, Maggie Irvine Houston, having predeceased him, Houston was survived by two sisters (one of whom was a half-sister) and two nephews. One nephew, Charles E. Drennen, adopted Plaintiff-Appellee, James L. Drennen, in 1947. Charles died in 1960 and Houston Drennen, George Houston's other nephew, died in 1961 — each leaving a will. Charles devised all his property to Appellee and his widow (who has quitclaimed her interests to Appellee). Houston Drennen died without children and devised all his property to his widow. She died and left whatever interest she had in the land in question to the Church Appellants.
As stated, stipulations of facts were entered at trial. Stipulation 14 provides:
 "14. At the time of the death of Ellen Irvine Tolley there was no person in existence who was a blood relative of the said George S. Houston."
Stipulation 17 provides, inter alia:
 ". . . Kate Irvine Thompson and Agnes Irvine Packer are the closest living blood kin of Maggie Irvine Houston and Emma Houston Drennen and were such at the time of the death of Ellen Irvine Tolley."
Ellen Irvine Tolley occupied the land as a life tenant until her death. This suit followed.
The pertinent provisions of George Houston's Will are contained in "Item 2" thereof. It provides, inter alia:
 "After the death of my wife, I want Ellen Irvine, my wife's niece, who has lived with us for many years, to have the use of the house at Belle Mina, Alabama, so long as she may choose to use it for her home. While she is so using the house, she may also have the use of the whole Section 29. In allowing the said Ellen Irvine the use of the property above set out, she must use the rents and income, as far as may be necessary, to keep the house and farm buildings in a good state of repair and properly protect them by insurance, and pay all taxes against the property. My purpose is to provide a home for Ellen Irvine for and during her natural life. But should she decide at any time not to live on the farm as her home, then upon her abandonment of the farm as her home, or upon her death, should she continue to live there until she dies, the said house and land as above set out, shall at once pass to my two sisters, Mary Ella Houston and Emma Houston Drennen of Birmingham, Alabama, in fee simple, share and share alike, or to the survivor of them. Should they both die before the said Ellen Irvine or should they both be dead at the time she abandons the farm as her home, the said house and land shall go to my nephews, Houston and Charles Drennen, in fee simple, share and share alike. Should either of my said nephews die before the said Ellen Irvine, leaving lawful issue, then said issue shall take the share that the deceased parent would have taken. Should he not leave lawful issue, then the whole place shall go to the survivor. Should both of my said nephews die before the said Ellen Irvine, leaving lawful issue, then said issue shall take, share and share alike. Should both of my said nephews die before the said Ellen Irvine, without lawful issue, or should they both be dead without lawful issue surviving them, when *Page 856 
the said Ellen Irvine abandons the farm, then in either event I give the home and land to any of my kindred then living, share and share alike." (Emphasis added.)
At Ellen Irvine Tolley's death, Mary Ella Houston, Emma Houston Drennen, Houston Drennen and Charles E. Drennen were all deceased. It is undisputed that should this Court deem James Drennen, Appellee, the lawful issue of Charles Drennen, no further question need be decided because such holding would clearly be dispositive.
Initially, it should be pointed out that Appellee has filed a Motion to Dismiss the Appeal of Agnes Irvine Packer and Kate Irvine Thompson as being untimely. Following trial, the Court entered its judgment on September 27, 1977. The Church Defendants filed a Motion to Amend the Judgment on October 11, pertaining to its cross-claim and costs of trial. The Court amended its judgment on October 31 and the Church Appellants filed their Notice of Appeal on November 8. Packer and Thompson filed their Notice of Appeal on November 28-62 days after the original judgment.
Appellee asserts that such notice was untimely because it violated Rule 4 (a), ARAP. The tolling provision, he contends, is inapplicable because the post-judgment motion did not pertain to those parties. This argument is fallacious, however, because the original judgment was not final in that all the rights and liabilities of all the parties had not been adjudicated at that time. As we stated in Nelson-AmericanDevelopers, Ltd. v. Enco Engineering Corp., 295 Ala. 185,326 So.2d 103 (1976).
 ". . . Nowhere do we find therein any `express determination that there is no just reason for delay and upon an express direction for the entry of judgment' in accordance with the mandate of Rule 54 (b) A.R.C.P.
 "When there are multiple parties (as here) and multiple claims (as here) the rule requires such determination and direction for the reason that the order entered is interlocutory and `is subject to revision at any time before a judgment which adjudicates all the rights and liabilities of all the parties. Because it is subject to revision, it is not a final judgment and will not support an appeal.'" 295 Ala., at 187, 326 So.2d at 104.
See also Simpson v. First Alabama Bank of Montgomery,345 So.2d 292 (Ala. 1977). Therefore, the appeal would not lie until entry of the amended judgment and the Motion to Dismiss the Appeal is not well taken.
In the case-in-chief, Appellants contend that the law, at the time of the execution of the Will, did not include adopted children within the term "lawful issue." In support of this contention, they cite Russell v. Russell, 84 Ala. 48, 3 So. 900
(1887). Thus, they argue, the testator did not intend to include such persons within that class.
It is well settled that the intention of the testator is the polestar to guide a court in the construction of a Will. That is the law of the instrument and, in arriving at this intent, the Court should consider the instrument as a whole. Perdue v.Roberts, 294 Ala. 194, 314 So.2d 280 (1975); and Blackwell v.Burketts, 251 Ala. 233, 36 So.2d 326 (1948). Where latent ambiguities arise, the intent of the testator may be ascertained not only by the writing itself, but also by attending facts and circumstances. First National Bank ofBirmingham v. Klein, 285 Ala. 505, 234 So.2d 42 (1970); and 86 A.L.R.2d 12, § 3.
At the time the Will was executed, adopted children were generally not included in the term "lawful issue." See Russell, supra. Before the testator's death, however, the Legislature had passed, in 1931, a statute which permitted adopted children to inherit property by and through their adoptive parents. 1931 Ala. Acts, p. 504-8. Though not expressly controlling the provision before us, such statute is instructive as to the public policy of both that time and the present. See McCaleb v.Brown, 344 So.2d 485 (Ala. 1977).
In McCaleb, we stated: *Page 857 
 "Therefore, we hold consistent with the adoption statute which creates a parent-child relationship between the adopter and the adoptee, that the latter is presumptively within the designation of the adopter's descendants unless the context or circumstances clearly establish a contrary intention." 344 So.2d, at 489. (Emphasis added.)
We can see no reason for following a different rule with respect to the term "lawful issue." Thus, unless there clearly appears language or circumstances by which the testator foreclosed operation of the presumption, adopted children are included within the term "lawful issue."
The Will, when read as a whole, does not indicate whether the testator intended to include, vel non, adopted children within the term "lawful issue." The surrounding circumstances relate merely to the scrivener's apparent abilities and the law of that time.
 "[Appellants] argue, however, that the controversy can be resolved merely by looking at the word `issue', which in their view has an established legal meaning that excludes adopted children. We disagree. Our cases have seldom discussed the term in relation to adoption, and enough uncertainty surrounds its usage that we doubt a competent draftsman who wanted to exclude adopted children would rely on the word `issue' alone to express that purpose." Johns v. Cobb, 131 U.S.App.D.C. 85, 402 F.2d 636 (1968).
The evidence here is insufficient to "clearly establish a contrary intention." Therefore, adopted children, under the circumstances and facts as here presented, are included within the term "lawful issue" and, as such, James Drennen owns a fee interest in the property in question. This is in keeping with the strong public policy, expressed in both statutory and case law, equating adopted and natural children. See § 26-10-5 (c), Code (1975); McCaleb, supra. Of course, our ruling does not foreclose the possibility of exclusion in subsequent cases wherein a more definite intent to exclude may be proved. See generally Zimmerman v. First National Bank of Birmingham,348 So.2d 1359 (Ala. 1977).
The judgment of the trial Court is affirmed.
AFFIRMED.
FAULKNER, J., concurs.
MADDOX, SHORES, EMBRY and BEATTY, JJ., concur specially.
TORBERT, C.J., and BLOODWORTH and ALMON, JJ., dissent.