Irene Elizabeth Batchelder and William Copeland Tierce were married in November 1942. In February 1944, William left the United States for military service in Italy. William returned to the United States in December 1945 and learned that Irene was approximately six months pregnant. On February 2, 1946, William sued for a divorce on the ground of adultery. Shortly thereafter, Irene and William were divorced.
At the time of the divorce, Irene was pregnant with the defendant, Dennis Ray Tierce. The issue of Dennis Ray's paternity was not adjudicated during the divorce proceedings. On April 4, 1946, Dennis Ray was born; his birth certificate listed William as the father.
William remarried; he and his second wife, Grace Clements Tierce, had five children — Brenda T. Scrivner, Shelia T. Ellis, Howard W. Tierce, Cynthia Tierce, and Edna Tierce. William died in December 1972. Approximately 17 years later, in December 1989, William's father, John R. Tierce ("the testator"), died. The executors of the testator's estate, Reba Gilliam and John D. Tierce, filed a routine accounting of the estate and submitted a list of 10 heirs, which named Dennis Ray as the son of William and as a possible heir to the estate. Forty-five years after Dennis Ray's birth and over 20 years after William's death, Shelia T. Ellis sued for a declaratory judgment, asking the court to determine that Dennis Ray was not the son of William and, therefore, that he was not entitled to a share of the estate. The trial court ruled that Dennis Ray was not the biological son of William and, therefore, that he was not an heir to the estate. Dennis Ray appealed; we reversed the judgment and remanded the case, holding that Shelia's action was barred by the 20-year rule of repose. See Tierce v.Ellis, 624 So.2d 553 (Ala. 1993).
Thereafter, the executors of the testator's estate filed a "motion for declaratory judgment," seeking a determination as to whether our holding in Tierce v. Ellis required that Dennis Ray be designated as a distributee under the testator's will. The trial court ruled that Dennis Ray was not entitled to a share of the estate, finding that the testator had never recognized Dennis Ray as his grandson and that he had never evidenced an intention of including Dennis Ray as a distributee under his will. It is from that judgment that Dennis Ray now appeals. We affirm.
The testator's will provided in pertinent part as follows:
 "(c) Upon the death of my wife, I give, devise and bequeath Share # 2 (and also Share # 1, if my wife has failed to exercise the power of appointment) unto the Trustees under that certain Trust Agreement dated the 26th day of February, 1975, in force and effect between me, as Grantor, and Lura G. Tierce and Reba T. Gilliam, as original Trustees thereunder. It is my intention that said residue of my estate shall merge with and become a part of the trust or trusts created by me during my lifetime and that the shares created thereof for the benefit of my children shall participate equally in the assets transferred hereunder by my will.
 "(d) In the event that upon the death of my wife the trusts established under that certain Trust Agreement referred to in subparagraph [ (c) ] above of this Item of my Will shall not be in existence, then and in that event said residue of my estate shall be apportioned into so many equal shares as the number of my children then living or having died theretofore leaving lineal descendants who are then surviving. Each share so apportioned shall be delivered over to the child for whom it is set *Page 256 aside, free from trust, the lineal descendants of any deceased child shall take in equal shares, per stirpes, the share to which the parent would have been entitled if living [sic]."
(Emphasis added.)
The trust agreement referred to in the will, and executed on the same day as the will, contained the following relevant provisions:
 "2. Division of Corpus. The trust corpus shall be divided by the Trustees into equal shares, so as to provide one share for the primary benefit of each of Grantor's living children, namely Reba T. Gilliam, Eunice T. Lunsford, John D. Tierce, and Evelyn Oswalt, and one share for the descendants of Grantor's deceased son, William C. Tierce, namely: Brenda T. Scrivner, Shelia T. Ellis, Howard W. Tierce, Cynthia Tierce, and Edna Tierce. The share for the children of William C. Tierce, deceased, shall be divided so as to provide an equal share for each of said children of William C. Tierce, deceased. Each share shall thereafter constitute and be administered by the Trustees as a separate trust. The children and grandchildren of the Grantor herein named are hereinafter sometimes referred to collectively as primary beneficiaries and separately as primary beneficiary.
". . . .
 "[3](c) Notwithstanding any of the provisions contained in this agreement to the contrary, these trusts shall terminate at such time as all of the primary beneficiaries over the age of twenty-one years shall agree in writing to such termination, whereupon the Trustees shall distribute the corpus and undistributed income to each of the primary beneficiaries."
(Emphasis added.)
Because the testator's wife had predeceased him, and because the trust agreement had been terminated by the primary beneficiaries under the trust before his death, the operative provision in the will required that the testator's residuary estate "be apportioned into so many equal shares as the number of [his] children then living or having died theretofore leaving lineal descendants who [were] then surviving." The trial court ruled that the term "lineal descendants" in the will was ambiguous, when considered in light of the circumstances surrounding Dennis Ray's birth and the testator's execution of the companion trust agreement. The trial court concluded that the testator could not have intended for Dennis Ray to share in his estate as a "lineal descendant."
Dennis Ray contended below, and he contends on appeal, that the term "lineal descendants" is not, on its face, ambiguous and that the effect of our holding in Tierce v. Ellis, supra, was to qualify him as a lineal descendant of the testator as a matter of law. He argues that the trial court erred in looking outside the "four corners" of the will to ascertain the testator's intent. The executors contend that the trial court correctly considered parol evidence to reveal and to clear up a latent ambiguity in their father's will. They agree with Dennis Ray's contention that the term "lineal descendants" is not, on its face, ambiguous. They maintain, however, that the term is rendered ambiguous by the provisions of their father's trust agreement and by the circumstances surrounding the birth of Dennis Ray.
As has been noted many times by this Court, the intention of the testator is always the polestar in the construction of wills, and the cardinal rule is to ascertain the intention of the testator and to give it effect if the intended effect is not prohibited by law. Tierce v. Macedonia United MethodistChurch of Northport, 519 So.2d 451 (Ala. 1987). It is also well settled that in ascertaining the testator's intention, the trial court should consider the will as a whole and, if necessary to reveal and to clear up a latent ambiguity in a will, any relevant parol evidence surrounding the execution of the will. Fraley v. Brown, 460 So.2d 1267 (Ala. 1984); Gaffordv. Kirby, 512 So.2d 1356 (Ala. 1987).
The pertinent facts surrounding Dennis Ray's birth and the testator's subsequent execution of his will and trust agreement set out above were either stipulated to by the parties or appear to be undisputed. No oral testimony was presented before the trial court; therefore, we review the judgment in *Page 257 
this case without any presumption in favor of the trial court's findings. Bownes v. Winston County, 481 So.2d 362 (Ala. 1985). After carefully examining the record and the briefs of the parties, we conclude that the trial court did not err in considering parol evidence to construe the will and that the evidence supports the trial court's judgment.
We note initially that we agree with the parties that the term "lineal descendants" is not, on its face, ambiguous. InWright v. City of Tuscaloosa, 236 Ala. 374, 379, 182 So. 72,75-76 (1938), this Court stated:
 "In 37 C.J. [at p.] 1262, the author defines the term Lineal Descendant as: 'Direct descendant, but not brothers and sisters: one who is in the line of descent from a certain person: a term which is said to be synonymous with "issue." '
 " 'Descendant: One who is descended, as issue, lineally from another, however remotely, as a child, grandchild, great grandchildren.' Funk Wagnalls New Standard Dictionary, 687.
 "In the case of Culley et al. v. Elford, 187 Ala. 165, 65 So. 381 [ (1914) ], it was observed that (page 384) 'heir or heirs of her body' [means] lineal descendants.
 " 'In its legal sense, as used in statutes, wills, deeds, and other instruments, "issue" means descendants; lineal descendants; offspring. [Citations omitted.]' "
In McCaleb v. Brown, 344 So.2d 485, 488 (Ala. 1977), this Court, although stating that the terms "descendant" and "legal descendant" had no precise legal definition, found persuasive the definition of "descendant" contained in the fourth edition of Black's Law Dictionary as "[o]ne on whom the law has cast the property by descent." In Black's Law Dictionary (6th ed. 1990), the following definitions appear:
 "Descendant. Those persons who are in the bloodstream of the ancestor. Term means those descended from another, persons who proceed from a body of another such as a child or grandchild, to the remotest degree; it is the opposite of 'ascendants'. . . . In the plural, the term means issue, offspring or posterity in general. Also, all those to whom an estate descends, whether it be in a direct or collateral line from the intestate. . ..
 "Lineal descendant. One who is in the line of descent from the ancestor. The term may include an adopted child."
 "Descent. Hereditary succession. Succession to the ownership of an estate by inheritance, or by any act of law, as distinguished from 'purchase.' Title by descent is the title by which one person, upon the death of another, acquires the real estate of the latter as his heir at law. . . .
". . . .
"Classification
 "Descents are of two sorts, lineal and collateral. Lineal descent is descent in a direct or right line, as from father or grandfather to son or grandson. Collateral descent is descent in a collateral or oblique line, that is, up to the common ancestor and then down from him, as from brother to brother, or between cousins."
(Emphasis in original.)
However, under the peculiar circumstances of this case, there was a latent ambiguity in the term "lineal descendants" as used in the testator's will. Dennis Ray was born within 300 days after the marriage of William and Irene was terminated by divorce; therefore, he was legally presumed to be William's son. See Ala. Code 1975, § 26-17-5(a)(1). Consequently, because the challenge to his paternity is now barred by the rule of repose, see Tierce v. Ellis, supra, Dennis Ray falls within the generally accepted legal definition of a "lineal descendant" of the testator, and he would perhaps inherit from the testator under the general rules governing intestate succession. However, given the particular facts of this case, it does not necessarily follow that Dennis Ray's legal status as a lineal descendant of the testator entitles him to a share of the estate under the testator's will. As previously noted, testamentary intent is the polestar in the construction of wills. Tierce v. Macedonia United Methodist Church ofNorthport, supra. The evidence in this case indicated that *Page 258 
the testator believed that it was impossible for William to be Dennis Ray's father. The testator never acknowledged Dennis Ray as a grandson, and he excluded Dennis Ray as a beneficiary under the trust agreement that he executed on the same day that he executed his will. That agreement specifically states that one share of the trust corpus was set aside for "the descendants of Grantor's deceased son, William C. Tierce, namely: Brenda T. Scrivner, Shelia T. Ellis, Howard W. Tierce, Cynthia Tierce, and Edna Tierce." Thus, because William was deceased when the testator executed his will and the trust agreement, and because the testator had designated in his trust agreement those descendants of William whom he intended to share in his estate, it is evident that the testator intended for that portion of his will stating that "the lineal descendants of any deceased child shall take in equal shares, per stirpes, the share to which [William] would have been entitled if living" to allow only the designated descendants of William or, if any of them had died leaving children, their children, to share William's portion of the estate. Considering the particular facts of this case, and placing ourselves in the position the testator was in when he executed his will, as we are required to do, see Gotlieb v. Klotzman, 369 So.2d 798
(Ala. 1979), we conclude that it would be unreasonable to hold that the testator could have intended for a share of his estate to go to Dennis Ray. In reaching this conclusion, we note that this case is distinguishable from the cases cited by Dennis Ray involving adopted children. See McCaleb v. Brown, supra (deed construction); Zimmerman v. First National Bank of Birmingham,348 So.2d 1359 (Ala. 1977) (will construction); SouthsideBaptist Church v. Drennen, 362 So.2d 854 (Ala. 1978) (will construction); Gotlieb v. Klotzman, supra (will construction). In those cases, this Court held that adopted children were presumed to be included in designated classes of "children," "descendants," "surviving descendants," "legal descendants," or "lawful issue," unless the context or circumstances clearly established a contrary intention and the testator or grantor demonstrated a definite intent to exclude. The circumstances surrounding the birth of Dennis Ray and the language used by the testator in his trust agreement clearly provide a basis for the trial court's finding that the testator intended to exclude Dennis Ray from the class of "lineal descendants" designated in his will.
This is a classic case involving a latent ambiguity in a will. Parol evidence was admissible both to reveal and to clear up the ambiguity in the will that was caused by the circumstances surrounding its execution. Although the rule of repose prevents a direct challenge to Dennis Ray's paternity, his resulting legal status as a "lineal descendant" cannot be asserted to thwart the testator's intent.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
MADDOX, ALMON, KENNEDY, INGRAM and COOK, JJ., concur.